A93A2068. SHAKIM v. THE STATE.
A93A2373. DALTON v. THE STATE.
A94A0007. RAWLS v. THE STATE.
(438 SE2d 673)

BIRDSONG, Presiding Judge.

Shabazz Shakim, Bobby Lewis Dalton, and Darryl Rawls a/k/a David Wooden appeal their convictions for five separate counts of armed robbery, involving the successive thefts by car-jacking, with the use of a gun, of a Ford Escort, a BMW, and a Plymouth Acclaim. Their appeals are here consolidated.

The State's evidence showed that the car-jackings occurred on the night of February 29, 1992, while appellants and co-defendant Ted Williams, who was acquitted, were traveling together. At about 8:30 p.m., the first victim was washing his red Ford Escort when Bobby Dalton held a gun to his head and took his car, jewelry and money. Dalton got in the back seat of the victim's car while another co-defendant tried to drive it, but when he announced he could not drive a standard shift, another defendant took the wheel. The victim could not identify three of the men, but he later identified Dalton in a photo line-up.

About five-and-one-half hours later, four men in the red Ford rammed the second victim's black BMW. When this victim got out of his car, appellant Shakim held a gun in his face and the four defendants drove off in his car, leaving the Ford behind. As they were driving away, this victim heard one of them say he could not drive a standard shift. This victim identified Shakim and Rawls from the photo line-up.

About an hour later, the four armed robbers in the black BMW saw four young women with a 1992 Plymouth Acclaim. The women were parked next to a telephone booth so that one could use the telephone. Appellant Shakim walked up, spoke to the woman using the telephone and shook her hand. The robbers took the car and money at gunpoint. The victim at the telephone booth especially remembered Shakim because he was "cute," and she got a good look at all four defendants. She later identified all four from a photo line-up. The three women in the Plymouth identified only Shakim and Rawls from the photo line-up. Two robbers drove off in the BMW; the other two took the Plymouth.

Within 36 hours after car-jacking the Plymouth, all four defendants were arrested when they tried to sell two kilos of bogus cocaine to undercover agents. Rawls drove the Plymouth to meet the agents while the other three transported the bogus cocaine in another car. All were arrested and the Plymouth was traced as stolen. Officers used photographs taken of the drug defendants after their arrest and photos of two other persons for possible identification by the car-jack-

ing victims. The first car-jack victim picked photos of Dalton and Rawls. The second car-jack victim picked photos of Shakim and Rawls. Three of the women victims of the third car-jack picked photos of Shakim and Rawls, and the fourth woman who had been standing at the telephone booth picked photos of all four defendants: Dalton, Shakim, Williams and Rawls.

Appellants filed motions to suppress the photograph identifications. A day before trial Shakim and Dalton filed motions to sever which were renewed when Rawls decided to testify about the drug arrest so as to explain that he had borrowed the Plymouth. In ruling on the motions to suppress, the court examined the witness identification form which the witnesses had signed and had noted thereon that the first witness (owner of the red Ford) identified Dalton as having a nickel-plated automatic handgun; the second witness (owner of the BMW) identified Shakim and Rawls as both having had guns; two of the women who were in the Plymouth noted that Shakim and Rawls had guns and one noted that Rawls had a gun; the fourth woman, who was standing by the telephone booth, noted that Shakim had a gun.

All defendants were convicted except Williams, who was identified by only one of the witnesses. *Held*:

1. All appellants enumerate as error the denial of their motions to suppress, motions for acquittal and motions for new trial, on grounds that the photo line-up identification and the in-court identification of each appellant was so impermissibly suggestive that it was subject to a substantial likelihood of irreparable misidentification.

Appellants contend that the photo line-up was suggestive in that it consisted of six photos of persons, two of whom were dissimilar to the four photos of the co-defendants, which were distinguished by identical backgrounds including height marks indicating that the photos were made at a line-up. These photos were in fact taken after their arrest on the cocaine charge. Appellants also contend that a few days before trial, when they were in an empty jury box, dressed in inmate clothing, they were viewed by all the victims for several minutes.

The photographs used in the line-up are in the record. We do not find that the photographic line-ups were impermissibly suggestive; consequently, we need not determine whether the procedure created a substantial likelihood of irreparable misidentification. *Colston v. State*, 205 Ga. App. 782, 783 (423 SE2d 714). The photos of the two persons not involved depicted men with similar complexions, hair length and facial features. The witnesses viewed the photographs separately from the other witnesses and there is no suggestion that they were coached. The first victim and the second victim viewed the photo line-up and made their identifications at different times and

places. Each of the four women viewed the photos in a room separate from the others and was told not to discuss her conclusions. See *Cheeves v. State*, 157 Ga. App. 566 (278 SE2d 148). The fact that all four defendants were in the line-up of six and the fact that there were height markings in the four photos of the persons arrested at the bogus cocaine sale, do not render the procedure suggestive. *Eiland v. State*, 246 Ga. 112 (268 SE2d 922); *Jackson v. State*, 209 Ga. App. 53, 54 (432 SE2d 649); see *Taylor v. State*, 203 Ga. App. 210 (1) (416 SE2d 554). As a matter of fact, the height markings in the four photographs were not suggestive, because they are not so distinctive as to lead to an " 'all but inevitable' " identification of appellants. *Jackson*, supra. In fact, only one of the six witnesses picked all four defendants. The second male victim picked only Shakim and Rawls, and three of the women also picked only Shakim and Rawls. The witnesses were not unduly influenced by the height markings in the four photos, as none identified more than two of those photos except the woman who testified she could see all the robbers from her position at the phone booth.

Finally, the mere fact that the witnesses viewed the defendants in inmate clothing in court before trial does not taint the in-court identification. See *McClesky v. State*, 245 Ga. 108 (263 SE2d 146); *Anderson v. State*, 206 Ga. App. 354 (426 SE2d 6). The trial court did not err in denying the motions to suppress, the motions for acquittal and motions for new trial on these grounds.

2. Appellants Shakim and Dalton contend the trial court erred in denying their motions to sever when appellant Rawls stated he intended to testify about the drug arrest, and they contend this evidence impermissibly tainted their character.

It is well settled that all of the circumstances connected with an accused's arrest are admissible as evidence at trial, even those which establish the commission of another criminal offense and bring into question his character. *Bixby v. State*, 234 Ga. 812 (218 SE2d 609); *Blackshear v. State*, 199 Ga. App. 839 (2) (406 SE2d 269); *Steele v. State*, 196 Ga. App. 330 (396 SE2d 4). The circumstances of the arrest are admissible for whatever value the jury wants to place on them (*Bogan v. State*, 206 Ga. App. 696 (426 SE2d 392)), and though evidence may incidentally put character in issue or be prejudicial, it may be admitted if otherwise relevant. Id. The trial court did not abuse its discretion in refusing to sever appellants' trials because one of the defendants chose to admit evidence which was admissible. See *Kelly v. State*, 209 Ga. App. 789 (434 SE2d 743).

3. Appellant Dalton contends the trial court erroneously admitted the evidence of the drug arrest as a "similar transaction," when he did not receive the State's notice of intent to introduce this evidence pursuant to Uniform Superior Court Rule 31.3 (b). *Williams v. State*,

261 Ga. 640, 642 (409 SE2d 649). The record shows that the State did send Dalton's attorney a notice of intent to introduce evidence of the arrest on drug charges, thereby complying with the rule. Although Dalton's attorney stated in his place that he did not receive the notice because he had moved his office, the trial court found that the attorney had notice prior to trial and that Dalton was not prejudiced by his failure to receive it in the mail. Moreover, as this evidence was admissible as circumstances of the arrest and as part of a continuing criminal enterprise, it is not objectionable on grounds that it was a "similar transaction" for which compliance with Superior Court rules and with *Williams*, supra, is required.

*Judgments affirmed. Pope, C. J., and Andrews, J., concur.*

DECIDED DECEMBER 1, 1993.

*Ellis W. Peetluk*, for Shakim.
*Rickey L. Richardson*, for Dalton.
*Hester & Hester, Frank B. Hester*, for Rawls.
*Lewis R. Slaton, District Attorney, Ron Dixon, Vivian D. Hoard, Assistant District Attorneys*, for appellee.