## A98A0753. HEAD v. THE STATE.
### (504 SE2d 499)

POPE, Presiding Judge.

The indictment against Marcus Head alleged that Head committed aggravated assaults upon Randall Hawkins and Anthony Pierce, that he kidnapped Deidre Triplett, and that he committed burglary and criminal trespass by entering Hawkins and Pierce's dwelling with the intent to commit aggravated assault and by damaging a door. The jury found Head guilty only of the two aggravated assaults (OCGA § 16-5-21) and the criminal trespass (OCGA § 16-7-21).

1. Head challenges the sufficiency of the evidence to support his aggravated assault convictions.

"On appeal of a guilty verdict, we do not redetermine the factual issues decided by the jury nor the weight of the evidence, but only its sufficiency under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). [Cit.]" *Newton v. State,* 226 Ga. App. 501, 502-503 (2) (486 SE2d 715) (1997).

The State's evidence showed the following. Head and Triplett were romantically involved and were living together when Triplett ended their relationship. Because of her fear of him, she spent the first night of their separation at the home of their mutual friend, Hawkins, with whom Pierce was residing. The next morning Head went to Hawkins' residence and attempted to gain entrance. When Hawkins refused to let him enter, Head retrieved a rifle from his truck. Hawkins instructed Pierce and Triplett to go to the back of the

house. Head began to force his way in by breaking down the front door. After Hawkins dove out of a bedroom window, Head confronted him outside, pointed the rifle at him, and cocked it. Hawkins threw his hands up.

When Pierce appeared in the front yard, Head "put the gun in his face." Pierce testified that this scared him and caused him to retreat. Head then instructed Triplett to come out of the house. She did so, and Head put the rifle back in his truck at her request. Head saw Pierce moving toward the truck, grabbed the rifle, forced Triplett into his truck, and drove away. The rifle was not loaded when police recovered it.

At trial, Head denied he was armed when he stormed the house. He testified that he retrieved his weapon only because Hawkins and Pierce began to approach him outside and caused him to fear for his safety. He denied pointing his rifle at either man.

OCGA § 16-5-21 (a) (2) provides that a person commits the offense of aggravated assault when he or she assaults "[w]ith a deadly weapon." A person commits the offense of assault or simple assault under OCGA § 16-5-20 (a) when he either "(1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

Head argues that evidence showing that he pointed a rifle at Hawkins and Pierce failed to establish they were thereby placed "in reasonable apprehension of immediately receiving a violent injury." To the contrary, the victims' testimony about their reactions to Head's aggression authorized any rational trier of fact to find this element of the crime beyond a reasonable doubt. See generally *Hurt v. State*, 158 Ga. App. 722, 723 (282 SE2d 192) (1981).

2. Head enumerates as error the court's jury charge on the offense of aggravated assault as it concerned the element of criminal intent. After jury deliberations had begun, this charge was repeated at the jury's request.

The court generally instructed the jury that "intent is an essential element of any crime and must be proved by the state beyond a reasonable doubt." In charging the jury on aggravated assault, the court initially explained that "[t]o constitute an assault, actual injury to the other person need not be shown. It is only necessary that the evidence show beyond a reasonable doubt an intention to commit injury on another person, coupled with the apparent ability to commit that injury, or that the other person was intentionally placed in reasonable apprehension of immediately receiving a violent injury from the defendant." This initial charge included both OCGA § 16-5-20 (a) (1) regarding attempt to commit a violent injury to the person of another, and (a) (2), regarding committing an act which places

another in reasonable apprehension of immediately receiving a violent injury. The recharge did not repeat the instruction on (a) (1).

In both charges, the court also instructed the jury that "[i]f the pointing of a firearm places the victim in reasonable apprehension of receiving an immediate violent injury the crime of aggravated assault has occurred. The emphasis is generally upon what the victim was thinking. Was he reasonably apprehensive of bodily harm? Such an assault will be aggravated when made with a deadly weapon regardless of intent. It makes no difference whether the weapon was loaded or could, in fact, be fired."

Although the latter part of the charge could have been better worded, a reasonable juror would only have understood it to mean that if the victim was reasonably apprehensive of receiving bodily injury, the crime of aggravated assault has been committed regardless of whether defendant intended to injure the victim or whether the gun was loaded or could be fired.

3. Head seeks resentencing because the State: (a) did not provide him with pretrial notice of the prior convictions considered in aggravation of punishment, as required by OCGA § 17-10-2 (a), and (b) misrepresented that he had served time in custody on an earlier probation revocation.

(a) When the State introduced copies of Head's prior convictions at the pre-sentencing hearing, he did not impose any objection to the court's consideration of these matters. Any issue concerning lack of notice has been waived. *Armstrong v. State*, 264 Ga. 237, 238-239 (2), (3) (442 SE2d 759) (1994) (failure to notify in advance of sentencing precludes evidence in aggravation of punishment, but failure to object waives any error); *Hutson v. State*, 216 Ga. App. 100, 101 (3) (453 SE2d 130) (1995).

(b) Head argues the State misrepresented that he had served time in custody on an earlier probation revocation and that the State's arguments were not based on admissible evidence. As in Division 3 (a), this enumeration is without merit because Head waived the argument by failing to object at the sentencing hearing.

At the sentencing hearing, the convictions introduced by the State showed that Head pled guilty to the prior criminal charges, was treated as a first offender, and was placed on probation. The prosecuting attorney stated that at some point after being sentenced, Head had been later "resentenced and sent to serve a period of time" in a correctional institution. In response, Head's attorney stated that at the time of the previous crimes, Head was youthful. Upon inquiry by the court, the prosecuting attorney stated that he did not know why Head's probation had been revoked but that Head received a longer sentence upon resentencing. The attorneys then presented argument regarding the sentencing, and again the prosecuting attor-

ney referred to Head's previous failure to follow the rules of probation. The prosecutor recommended that Head be given two consecutive twenty-year sentences for the aggravated assaults and a concurrent twelve-month sentence for criminal trespass. Defense counsel did not object to the prosecuting attorney's representations regarding Head's probation, but in his argument he asked for leniency because the offenses were crimes of passion. He requested a sentence of no more than five years' confinement.

The court recessed and retired to chambers. When the proceedings were resumed, the parties were asked to approach the bench for sentencing. The court asked if anyone wanted to say anything else, and defense counsel responded, "Mr. Head has advised me he has never in his previous case he never [sic] had his probation revoked. That's all I'm going to say to the court. This is what he has advised me." The court responded "all right" and pronounced consecutive ten- and fifteen-year sentences for the aggravated assaults and a concurrent twelve-month sentence for criminal trespass.

Here, Head argues that no admissible evidence was introduced proving his probation had been revoked and that the best evidence of a probation revocation would have been a certified copy of the revocation order. Moreover, Head argues that the prosecutor's oral statement was not even admissible to prove such fact. As stated above, we conclude that Head waived any "best evidence" objection to the prosecutor's representation by failing to raise the objection during the sentencing hearing. See generally *Thomas v. State*, 268 Ga. 135, 140 (13) (485 SE2d 783) (1997).

Moreover, even assuming arguendo that Head preserved the argument for our review, under this Court's "right for any reason" analysis, this Court presumes that the trial court acted properly in reaching its decision. Here, a "right for any reason" analysis would dictate that we conclude that the trial court did *not* rely upon the prosecutor's representation, but instead based the sentence upon admissible evidence.

4. Head contends that counsel rendered ineffective assistance by failing to request that the court instruct the jury on pointing a firearm at another and reckless conduct, as lesser included misdemeanor offenses of felony aggravated assault.

"As clarified by the Supreme Court in *Rhodes v. State*, 257 Ga. 368 (359 SE2d 670) (1987), OCGA § 16-11-102 (misdemeanor pointing of a firearm) applies only where the victim is not placed in reasonable apprehension of immediate violent injury by the pointing of the firearm (e.g., when the victim is unaware a weapon has been pointed at him or her), since otherwise the act of pointing a firearm at a person comes within the definition of aggravated assault, OCGA § 16-5-20 (a) (2) and 21 (a) (2)." *Watson v. State*, 199 Ga. App. 825, 827

(3) (406 SE2d 509) (1991). Although pointing a firearm at another is an offense included in aggravated assault, it is not error to refuse a charge on it when the evidence does not reasonably raise the issue that defendant may be guilty only of the lesser crime. *Green v. State*, 175 Ga. App. 92, 94 (4) (332 SE2d 385) (1985).

The State's evidence showed that both victims were aware that Head was pointing the gun at them and both feared immediate violent injury. Head's defense, established by his testimony, was that he had not pointed the gun at them at all. The evidence thus showed either the commission of the completed offense as charged or the commission of no offense. Head was not entitled to a charge on the lesser offense.

Nor was he entitled to a charge on reckless conduct. An essential element of the latter crime is criminal negligence. *Perryman v. State*, 208 Ga. App. 754, 756 (3) (431 SE2d 742) (1993). There was no testimony that would support a finding that Head's pointing the rifle at the two men was only criminally negligent rather than intentional. *Marion v. State*, 224 Ga. App. 413, 416 (2) (480 SE2d 869) (1997).

For these reasons, the failure to request jury instructions on these two less grievous offenses did not constitute ineffective assistance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Moreover, the absence of a request to charge may have been conscious and deliberate trial strategy. There is no transcript of the charge conference, and neither Head nor his trial attorney testified at the hearing on the motion for new trial. The only witness at that hearing was another criminal defense lawyer, who had not read the transcript of this trial. He testified that generally a defense attorney's omission of a request to charge on lesser included offenses is below the professional standard of reasonableness. But, as this Court has recognized, this decision is based on a myriad of complex factors. See *Hill v. State*, 228 Ga. App. 362, 364 (1) (492 SE2d 5) (1997); compare *Pearson v. State*, 216 Ga. App. 333 (454 SE2d 205) (1995) (defense counsel's failure to request a lesser-included-offense charge deprived defendant of his only defense). Defendant has not successfully discharged his burden of proving ineffectiveness. *Jones v. State*, 230 Ga. App. 65 (495 SE2d 327) (1997).

5. The last enumeration of error is the denial of a motion in limine filed prior to the hearing on the motion for new trial. This enumeration is without merit.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Blackburn, Ruffin and Eldridge, JJ., concur. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in all but Division 3 (b). As to it I respectfully dissent. Lacking in the record is assurance that a significant item in aggravation of punishment, presented by the State, did not affect the determination of the sentence imposed.

The convictions introduced by the State showed that Head pled guilty to the charges and was placed on probation. At the hearing, the prosecuting attorney orally represented to the court that Head's probation had been revoked, resulting in his incarceration. Upon inquiry by the court, the prosecuting attorney stated that he did not know why Head's probation was revoked but that he did receive a longer sentence upon resentencing. Defense counsel did not immediately challenge the accuracy of the additional representations, and the prosecutor recommended that Head be given two consecutive twenty-year sentences for the aggravated assaults and a concurrent twelve-month sentence for criminal trespass. Defense counsel asked for leniency because the offenses committed were crimes of passion, and a sentence of no more than five years' confinement was requested.

Head objected to the prosecuting attorney's unexpected oral representation at trial as being inaccurate, when he had the opportunity to tell his counsel during the court's recess. No admissible evidence was introduced proving his probation had been revoked. The best evidence of a probation revocation would be a certified copy of the revocation order, but the prosecutor's oral statement was not admissible as any sort of evidence to prove such fact.[1] It did not constitute "evidence," which is what OCGA § 17-10-2 (a) requires.

Head complains that the prosecutor's statement to the judge was erroneous. The State does not maintain it was accurate. Instead, it avoids the issue by arguing that Head failed to establish that the trial court considered the undocumented representation in sentencing him. To the contrary, the sequence of events that transpired at presentencing shows that the court arrived at its sentencing decision during the recess, after the representation was made by the prosecuting attorney but before its accuracy was challenged by the defense. The record indicates that the court did in fact consider the representation, which was made expressly "in aggravation" of punishment, that defendant had once failed at probation.[2]

Consequently, the sentences should be vacated and the case remanded to the trial court for possible resentencing.[3] The trial court

---

[1] See *Ramsey v. State*, 218 Ga. App. 692, 693 (4) (462 SE2d 806) (1995), citing OCGA § 24-5-31.

[2] Compare *Tutton v. State*, 179 Ga. App. 462 (2) (346 SE2d 898) (1986).

[3] See *Ramsey v. State*, supra.

should first determine whether a false fact intensified the punishment. If so, then defendant must be resentenced; if not, the original sentence may be reinstated.

The deprivation of liberty must rest on a sound and solid base and not merely on one which is presumed to be free of dependence on unestablished, challenged fact. It is safer to require clarity than to risk covering even unintended error.

DECIDED JULY 7, 1998 —
RECONSIDERATION DENIED JULY 30, 1998.

*Lauren L. Becker*, for appellant.

*Benjamin F. Smith, Jr.*, District Attorney, *Debra H. Bernes, Nancy I. Jordan, Donald T. Phillips*, Assistant District Attorneys, for appellee.