## A98A1322. CONYERS v. THE STATE.
(507 SE2d 842)

McMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of one count each of armed robbery, possession of tools for the commission of a crime, and aggravated assault. Viewed in the light most favorable to the jury's verdict, the evidence adduced below revealed the following: Sixty-five-year-old Eddie Ralph Parker ("the victim") drives a truck for Georgia Crown Distribution, delivering wine, beer, and liquor to stores, bars, and restaurants all over Georgia. Each driver is responsible for collecting payment at the time of delivery, either by check or in cash. On February 8, 1995, the victim was responsible for "a little better than 400 cases, which is a heavy load." He was authorized to hire a helper from a labor pool. The victim identified defendant as the helper who waved the victim down and said "I'm supposed to go with you today." The pair proceeded along the victim's route. In Gainesville, they delivered approximately 250 cases of alcohol to Queen City Package, collecting "$5,000 in cash money" in return, "all $100 bills." Defendant was "[s]tanding right there near [the victim]."

The last delivery was at 1:00, after which the victim returned to Atlanta. But the victim first "got off on 85 and got on 285, went down to Memorial drive and went by [his] house." Defendant remained in the truck, while the victim (with the $5,000 cash in his pocket) took about 15 minutes to take a blood pressure pill. Back on the road, they were traveling "down I-20. Just before [they] got to Hightower, [defendant] reached and got me in the side of the collar, just like this (indicating), and pulled [the victim] over towards him. And [defendant] told [the victim] to give him that G— d— money. And [the victim said] 'Mister, it's not worth it.' [The victim] tried to talk to defendant[, who told the victim] to 'shut up, it aint your G— d— money no way.' So [the victim] hushed. [Defendant] said he would mess [the victim] up, and he had a knife in his hand." The victim demonstrated with a knife how defendant "just reached over and caught me in the side of the neck and pulled [the victim] to [defendant, who] said, 'I'll mess you up,' give that so-and-so money. [Defendant] was screaming,

give me that so-and-so money." To effectuate the taking, defendant "made [the victim] keep both hands on the steering wheel[, while defendant] went across [the victim's] back, in [his] back pocket, and got [the] billfold and just emptied it." The truck exited the interstate onto Hightower, "turned right on Simpson, went down one block, turned right again and went up on the hill by the school, [where defendant] jumped out the truck."

Sheryll Elizabeth Aulgur is area director for Interim Personnel, a temporary placement service. She identified defendant as one of the temporary workers "dispatched that day to Georgia Crown as a driver['s] helper." But defendant was never paid by Interim Personnel for February 8, 1995 because he "never turned in a time sheet for working at Georgia Crown." The Georgia Crown practice for temporary helpers sent by Interim Personnel is that "[t]hey are to return to the warehouse, and the warehouse supervisor signs their time sheet. . . ." Jerry Schuler, the project manager for distribution and warehousing, testified that when the victim reported having been robbed at knifepoint, "he was certainly scared and shaken, didn't know what to do."

Defendant testified he argued with the victim because defendant felt he was performing the lion's share of the heavy lifting. At the end of the day, defendant "asked Mr. Parker, 'Will you sign my ticket?' And he said, 'You are going back.' And [defendant] said no, and . . . got out of the truck." Defendant claimed he never even saw the $5,000 in cash. Nevertheless, the jury found him guilty as charged. Defendant's motion for new trial was denied and this appeal followed. *Held*:

1. Defendant moved in limine to exclude reference to the circumstances of his arrest, more than a year after the armed robbery. Specifically, he wanted "no mention as to the defendant's whereabouts during the interim, [because he had been incarcerated in DeKalb County,] . . . no mention of the place or description at which he was arrested, and . . . no mention of the arrest date." Also, defendant sought to exclude reference to the fact that he did not return to work at the temporary agency. The trial court granted the motion in part, excluding any reference to the fact that defendant was in the DeKalb County jail between the time of the armed robbery and the time of arrest, and further excluded any description of the situs of defendant's arrest as a " 'known drug area' or anything like that." The trial court denied the motion as to the date of defendant's arrest and the location of the arrest. The trial court also denied the motion regarding "defendant's failure to return to work."

At trial, the State called the patrolman who arrested defendant pursuant to an outstanding warrant for this armed robbery. Over objection, Officer M. A. Hall of the Atlanta Police Department testi-

fied that, on September 5, 1996, he "observed three gentlemen standing on the side of [a] house below the window[, which] appeared to be a drug transaction going down. . . . [Officer Hall] detained the subjects," one of whom he identified as defendant. A computer check indicated that defendant "was wanted for [this] armed robbery."

Defendant specifically "object[ed] to Officer Hall testifying at all in this matter because the arrest of [defendant] is not an issue. [The State had already] established the date of the offense, the date of the arrest, the fact that he was subsequently located and arrested. And it really is not an issue about which the truth needs to be found; . . . citing to the Momon decision. [*Momon v. State*, 249 Ga. 865 (294 SE2d 482).]" The State replied that the officer's testimony was necessary because "we don't want this to appear like an arbitrary stop and mislead the jury into believing that this was just an arbitrary and capricious stop without any type of articulable suspicion when, in fact, there was." Defendant then offered to stipulate to the reasonableness of the stop as well as the fact of the arrest but argued the prejudicial impact of the suspected drug transaction outweighed any probative value.

The trial court ruled that Officer Hall "can testify as to the facts of the arrest," reasoning the evidence was "relevant and [only] incidentally may place the character of the defendant in[to] the case. . . ." In his sole enumeration of error, defendant contends this evidentiary ruling improperly injected his character. We disagree.

The admission of evidence is committed to the sound legal discretion of the presiding judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *McBee v. State*, 228 Ga. App. 16 (491 SE2d 97). "It is well settled that all of the circumstances connected with an accused's arrest are admissible as evidence at trial, even those which establish the commission of another criminal offense and bring into question his character. *Bixby v. State*, 234 Ga. 812 (218 SE2d 609); *Blackshear v. State*, 199 Ga. App. 839 (2) (406 SE2d 269); *Steele v. State*, 196 Ga. App. 330 (396 SE2d 4). The circumstances of the arrest are admissible for whatever value the jury wants to place on them (*Bogan v. State*, 206 Ga. App. 696 (426 SE2d 392), and although evidence may incidentally put character in issue or be prejudicial, it may be admitted if otherwise relevant. Id." *Shakim v. State*, 211 Ga. App. 199, 201 (2) (438 SE2d 673).

In the case sub judice, the trial court took pains to ensure that the jury was not informed of defendant's incarceration in DeKalb County for a different offense during the period between the armed robbery at issue and defendant's subsequent arrest. Even though defendant offered to stipulate to the existence of an articulable suspicion for the initial stop, the State was entitled to rebut any inference

that the initial stop was unauthorized, harassing, or arbitrary. " ' "The flight of the accused, the time when and the place where arrested, the manner of the arrest, how he was armed and whether he resisted, and all the circumstances connected with the arrest, we consider proper evidence to be submitted to the jury to be weighed by them for what they are worth." *Wayne v. State*, 56 Ga. 113 (5), 119.' " *State v. Luke*, 232 Ga. 815, 816 (209 SE2d 165). In the case sub judice, the trial court's determination that the circumstances of defendant's arrest were more probative than prejudicial does not constitute an abuse of discretion, and is affirmed. See, e.g., *Sisson v. State*, 232 Ga. App. 61, 64 (3), 66 (3) (b) (499 SE2d 422). Compare *Williams v. State*, 268 Ga. 452, 453 (2), 454 (490 SE2d 381) and *Robinson v. State*, 263 Ga. 424 (1), 425 (2) (b) (435 SE2d 207).

2. Additional arguments, objecting to proof that defendant did not return to work after this incident, have been considered and are found to be without merit.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED OCTOBER 7, 1998 —
RECONSIDERATION DENIED OCTOBER 22, 1998 — ▮▮▮▮▮▮

*James W. Gibert*, for appellant.
*Paul L. Howard, Jr., District Attorney, David E. Langford, Assistant District Attorney*, for appellee.