**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**April 26, 2018**

# In the Court of Appeals of Georgia

A18A0644. LANHAM v. THE STATE.

BARNES, Presiding Judge.

A jury found Larry Lanham guilty of rape, and the trial court denied his amended motion for new trial. On appeal, Lanham contends that his trial counsel was constitutionally ineffective and that the trial court erred by allowing the State to introduce improper character evidence and by considering statements made by the prosecutor about Lanham's prior convictions during sentencing.[1] Upon our review, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807, 807 (732 SE2d 845) (2012). So viewed, the

---

[1] Because Lanham was tried in March 2011, Georgia's new Evidence Code does not apply to the evidentiary issues raised in this appeal. See Ga. L. 2011, p. 214, § 101 (new Evidence Code "shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date").

evidence showed that on August 5, 2010, around midnight, the nineteen-year-old victim, who was two months pregnant, was walking down the road after visiting her mother's house in Richmond County, Georgia, when a man whom she did not know approached her, attempted to flirt with her, and followed her down the road after she ignored him. The man caught up with the victim, and after she refused to give him her phone number and asked him to go away, he grabbed the victim by the neck, forced her down on the ground behind a bush, made her remove her pants and underwear, and pulled up her shirt and bra. The man forced the victim down the embankment into a ditch as she struggled with him, where he vaginally penetrated her with his penis and placed his mouth on her breast as she unsuccessfully tried to fight him off of her. At one point during the attack, the man pulled the victim on top of him and tried to force her to have sexual intercourse with him in that position, but he lost his erection.

The victim tried to escape several times during the attack when cars passed by the location, but the man dragged her further down into the ditch, telling her that if she tried to get away he would kill her. As the attack continued, the victim pleaded with the man not to hurt her because she was pregnant, but the man continued to rape her and put his hands over her mouth to stop from her screaming. The man told the victim at one point that he would not leave until he ejaculated. He also said that his

2

name was "Lawrence" and told the victim that he was "just tired of being rejected by people."

The victim ultimately escaped from the attack and flagged down a passing motorist, who called 911 and drove the victim to a nearby police station. A corporal and an investigator with the Richmond County Sheriff's Office were on duty that night when the victim arrived at the police station. They saw that the victim had nothing on but a short shirt and was extremely distraught. According to the corporal, the victim was hyperventilating and vomited as he tried to calm her down. The investigator saw that the victim had debris in her hair, had scratches on her back, side, and arms and cuts on her knee and foot.

The victim told the sheriff's corporal and investigator about the attack and described where it had occurred. Based on the victim's description, the investigator was able to locate the scene of the crime, where she found the victim's flip-flops, pants, underwear, and cell phone. The investigator also found pieces of the victim's hair and observed that the vegetation in the ditch area was disturbed, consistent with a struggle having occurred there. The investigator took photographs of the crime scene and collected the victim's hair, clothes, and cell phone. The police canvassed the area but were unable to locate a suspect or any witnesses.

The police had the victim transported to the hospital for performance of a sexual assault kit. The victim described the attack to a hospital nurse, and she also told the nurse that she had engaged in consensual sexual intercourse with her partner using a condom around 11:00 p.m. that night, which the nurse documented in a sexual assault report. During the physical examination, photographs were taken of the victim's injuries, including bruising and scratches on her hands and back and scrapes on her legs. Swabs were taken from the victim's breast, vagina, and cervix for DNA testing.

A few weeks later, on August 27, 2010, the victim was walking at night with her aunt and her aunt's boyfriend near the location of the attack. A man approached the aunt's boyfriend and began a conversation with him. The man told the aunt's boyfriend that he was not from the area and asked about where he could find some drugs. The victim recognized the man's voice and face as that of her attacker and told her aunt. The victim then walked with her aunt to her mother's house and called 911. Responding to the 911 call and the description provided of the suspect, officers searched the area and the man, identified as defendant Lanham, was located and arrested. The victim was driven in a patrol car by the scene of the arrest, where she

saw Lanham and identified him as her attacker. The victim again identified Lanham as her attacker in a photographic lineup later that night.

After Lanham's arrest, a search warrant was executed for his DNA. The DNA from the victim's breast swab matched Lanham's DNA. Male DNA was found in the victim's vaginal and cervical swabs, but the amount of DNA recovered from those swabs was insufficient to create a specific DNA profile.

Lanham was indicted for rape and was tried before a jury in March 2011. Before the trial, the prosecutor moved in limine to exclude any evidence of the victim's past sexual behavior under Georgia's Rape Shield Statute, other than the fact that the victim was pregnant at the time of the rape. Defense counsel responded that the prosecutor "generally [had made] the correct statement of law," with the caveat that if any evidence fitting into an exception to the Rape Shield Statute arose during the trial, the defense would raise the issue and seek a ruling from the trial court. The trial court thereafter granted the State's motion.

At the ensuing trial, the victim testified to events as set out above and identified Lanham in the courtroom as her attacker, and the State introduced into evidence the victim's hair and personal belongings retrieved from the crime scene and photographs of her injuries and of the scene. The sheriff's corporal, investigator, and hospital

5

nurse testified, as did the forensic biologist and forensic DNA analyst who tested the swabs taken from the victim.

Lanham elected not to testify and did not present any defense witnesses. The defense introduced into evidence the sexual assault report prepared by the hospital nurse in an effort to show inconsistencies in the victim's description of the attack. Pursuant to the trial court's ruling on the State's motion in limine, the report was introduced in a redacted form that omitted the victim's statement that she had consensual protected sex with her partner earlier that night. During closing argument, Lanham's counsel argued that there was insufficient evidence of penetration to support a rape conviction and that the jury should consider the lesser included offense of sexual battery.

Following its deliberations, the jury found Lanham guilty of rape. During the sentencing hearing, the prosecutor described Lanham's prior misdemeanor convictions, but did not introduce certified copies of those convictions. The trial court took into account Lanham's prior misdemeanor convictions and sentenced him to life in prison.

Lanham filed a motion for new trial, as amended, in which he asserted, among other things, that his trial counsel had rendered ineffective assistance. After

conducting a hearing in which Lanham's trial counsel testified, the trial court denied the amended motion for new trial. This appeal followed.

1. Lanham contends that his trial counsel rendered ineffective assistance in several respects. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Lanham

> must show both that counsel's performance was deficient, and the deficient performance was prejudicial to his defense[.] [F]ailure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong.

(Citations and punctuation omitted.) *Brannon v. State*, 298 Ga. 601, 611 (7) (783 SE2d 642) (2016). To show deficient performance, Lanham "must overcome the strong presumption that his counsel's conduct fell within the broad range of reasonable professional conduct," and he must demonstrate that his counsel's performance was objectively unreasonable under the circumstances and "in light of prevailing professional norms." (Citation and punctuation omitted.) Id. To show prejudice, Lanham

7

must prove a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, though not impossible to carry, is a heavy one.

(Citations and punctuation omitted.) *Martinez v. State*, 337 Ga. App. 374, 380 (3) (787 SE2d 308) (2016). In addressing a claim of ineffective assistance of counsel, appellate courts review the trial court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *Ellison v. State*, 296 Ga. App. 752, 755 (2) (675 SE2d 613) (2009).

(a) Lanham argues that his trial counsel was deficient in failing to object to the State's motion in limine and failing to seek to introduce evidence at trial that the victim had consensual sexual intercourse with her partner before the sexual assault. According to Lanham, introduction of the aforementioned evidence would not have violated Georgia's Rape Shield Statute[2] and was relevant to the defense's argument

---

[2] At the time of Lanham's trial in March 2011, the Rape Shield Statute was codified at OCGA § 24-2-3. See generally *Jones v. State*, 340 Ga. App. 568, 572 (3) (798 SE2d 87) (2017) (discussing former Rape Shield Statute); *Tidwell v. State*, 306 Ga. App. 307, 311-312 (5) (701 SE2d 920) (2010) (discussing exceptions to former Rape Shield Statute). The current Rape Shield Statute is codified at OCGA § 24-4-412.

that there was insufficient proof of penetration by Lanham. More specifically, Lanham argues that evidence of the victim's recent consensual sexual intercourse was relevant to his defense of lack of penetration because it would have shown that the male DNA recovered from the victim's vagina and cervix could have come from someone other than him.

Pretermitting whether the evidence of the victim's prior consensual sexual intercourse would have been admissible under the circumstances of this case and whether trial counsel was deficient for failing to seek to introduce it, we conclude that Lanham has failed to show prejudice resulting from the alleged deficiency. The victim identified Lanham as her attacker at trial and in a show-up identification and photographic lineup before trial. Furthermore, the victim unequivocally testified that Lanham forced her to have sexual intercourse with him,[3] and her testimony was corroborated by the testimony of the sheriff's corporal and investigator, who saw her shortly after the attack and testified that she was naked except for a shirt, was extremely distraught, and was hyperventilating and vomiting. The investigator also observed scratches on the victim's back, side, and arms and cuts on her knee and foot,

---

[3] We note that only slight penetration is necessary to support a rape conviction. See *Richie v. State*, 183 Ga. App. 248, 249-250 (1) (358 SE2d 648) (1987).

as well as debris in her hair, and the investigator found the victim's flip-flops, pants, underwear, cell phone, and hair at the nearby crime scene as described by the victim. Photographs of the victim's injuries and of the crime scene were introduced into evidence, and the State presented expert testimony that Lanham's DNA was found on the victim's breast and male DNA was found in her vagina and cervix.

Moreover, while the victim testified that Lanham lost his erection at one point during the attack, she testified that this occurred when he tried to force her to sit on top of him and have sexual intercourse with him in that position, which her testimony indicated was after he had already forced her to have sexual intercourse with him after pulling her down the embankment. Thus, the victim's uncontradicted testimony was that Lanham penetrated her during the attack. Additionally, the only evidence regarding the victim's prior consensual sexual intercourse with her partner was the nurse's sexual assault report reflecting that the victim had sex with a condom.

Under these combined circumstances, there is no reasonable probability that the outcome of the trial would have been different in the absence of trial counsel's alleged deficiency. See *Davis v. State*, 329 Ga. App. 797, 804 (3) (a) (764 SE2d 588) (2014) (defendant could not show prejudice resulting from trial counsel's failure to seek to introduce evidence of alternative sources of rape victim's injuries, given the

10

victim's testimony, her immediate outcry, and corroborating physical evidence, including the presence of the defendant's DNA).

(b) Lanham further argues that his trial counsel was deficient in showing the jurors during closing argument a redacted copy of the victim's sexual assault report prepared by the hospital nurse. The report had a section for "Other Relevant Sexual History," where, as previously noted, the reference to the victim's prior consensual sexual intercourse had been redacted. According to Lanham, the redacted version of the report made it appear as if the "Other Relevant Sexual History" portion of the report had been left blank, thus making it seem to jurors as if the victim had not had prior recent sexual intercourse and that the male DNA in her vagina and cervix came from Lanham.

"Defense counsel, however, is given wide latitude in making closing arguments. This Court will not, with benefit of hindsight, second-guess defense trial strategies in closing arguments. Absent a strong showing that counsel's actions were not reasonable, we will presume that these strategies were not deficient." (Citations and punctuation omitted.) *Allen v. State*, 263 Ga. 60, 62 (4) (428 SE2d 73) (1993). Here, the trial transcript reflects that Lanham's counsel used the victim's sexual assault report during closing arguments in an effort to show inconsistencies between

the victim's statements to the police and her statements at the hospital, and counsel testified at the new trial hearing that highlighting inconsistencies in the victim's account was the "only reason" for introducing such a report.

Accordingly, the record reflects that Lanham's trial counsel made a strategic decision to show the victim's redacted sexual assault report during closing argument, and we cannot say that counsel's decision to use the report to show inconsistencies in the victim's account of the crime fell outside the "broad range of reasonable professional conduct." *Brannon*, 298 Ga. at 611 (7). "The fact that [Lanham] and his appellate counsel disagree with the decisions, tactics, and strategies made by trial counsel does not demonstrate that [Lanham's] trial counsel [was deficient]." (Citation, punctuation, and footnote omitted.) *Harris v. State*, 257 Ga. App. 819, 823 (2) (b) (572 SE2d 370) (2002).

(c) Lanham next complains that his trial counsel was deficient in failing to object to the State's introduction of evidence that the victim was pregnant at the time of the attack. According to Lanham, the victim's testimony regarding her pregnancy was irrelevant to the facts of the case and was introduced only to inflame the prejudices of the jury, and his trial counsel should have objected to its introduction. We are unpersuaded.

12

"The State . . . is entitled to present the entirety of the res gestae of the crime involved." *Williams v. State*, 280 Ga. 539, 544 (4) (630 SE2d 410) (2006). Here, the victim testified that at the time of the sexual attack, she was two months pregnant but not yet showing visible signs of her pregnancy, and she pleaded with Lanham not to hurt her because she was pregnant. Under these circumstances, where the victim specifically communicated to her attacker that she was pregnant in an effort to dissuade him, the victim's pregnancy was relevant to the issues of force and consent and was part of the res gestae of the crime. Consequently, the victim's testimony about her pregnancy was admissible, and "trial counsel's failure to pursue a futile objection does not constitute [deficient performance]." (Citation, punctuation, and footnote omitted.) *Mitchell v. State*, 287 Ga. App. 517, 519 (1) (a) (651 SE2d 821) (2007). See *Thomas v. State*, 173 Ga. App. 810, 811 (1) (328 SE2d 422) (1985) (evidence that rape victim was pregnant was admissible, where there was evidence that the victim "refused to consent because of her fear for the welfare of her unborn child and herself, as she testified in the instant case"). Compare *Wilson v. State*, 9 Ga. App. 274, 289-290 (70 SE 1128) (1911) (holding that mere fact that victim of attempted rape was pregnant, without more connection to the attack, was immaterial and inadmissible and would serve only to inflame the jury).

13

(d) Lanham contends that his trial counsel was deficient in failing to object and move for a mistrial when the prosecutor stated during closing argument, "[Defense counsel] glosses over the fact that male DNA was found, the Y chromosome was found. She would not have a Y chromosome in her vagina or on her cervix but for the presence of male DNA." Lanham contends that the prosecutor's statement implied that the unidentified male DNA found in the victim's vagina and cervix must have come from Lanham, even though the prosecutor knew that the jury was unaware that the male DNA could have come from the victim's prior sexual partner. Hence, Lanham maintains that the prosecutor's statement was misleading, and that trial counsel should have objected and moved for a mistrial. We disagree.[4]

"[A] prosecutor [is] entitled to emphasize the evidence favorable to his contention, to discuss and draw inferences from factual matters in evidence relating

---

[4] At the new trial hearing, the assistant district attorney representing the State conceded that the closing argument, which had been made by a different assistant district attorney, was improper, but argued that it constituted harmless error. However, the assistant district attorney did not have a copy of the trial transcript to review prior to the new trial hearing, and, on appeal, the State argues that after conducting a full review of the trial transcript, the State has reevaluated its position that the closing argument was improper. In any event, were are "not bound by the State's concession as it is for this [C]ourt to determine whether [Lanham] is legally entitled to a new trial." *Tiller v. State*, 314 Ga. App. 472, 474 (3), n. 2 (724 SE2d 397) (2012).

to the credibility of witnesses, and to respond to points made in – and issues omitted from – the defendant's closing argument." *Spivey v. State*, 253 Ga. 187, 189 (3) (a) (319 SE2d 420) (1984). Here, the record, when read in context, reflects that the prosecutor's remark regarding the unidentified male DNA found in the victim's vagina and cervix was in response to defense counsel's statement during closing argument that "they have no male DNA from her vaginal area." Because the prosecutor's remark was not improper under these circumstances, Lanham's trial counsel was not deficient for failing to object and move for a mistrial. See *Adorno v. State*, 314 Ga. App. 509, 515 (3) (724 SE2d 816) (2012) (defendant failed to demonstrate ineffective assistance, where "any objection or motion for a mistrial would have lacked merit"). Furthermore, "given the strength of the evidence against [Lanham], he has failed to show that, even if trial counsel had moved for a mistrial . . . , there is a reasonable probability that the trial court would have granted a mistrial or that the outcome of the trial otherwise would have been different." *Watkins v. State*, 289 Ga. 359, 362-363 (3) (b) (711 SE2d 655) (2011).

(e) Lanham also argues that his trial counsel was deficient in failing to object when the victim testified that on the day Lanham was arrested, Lanham had approached her aunt's boyfriend and asked him where he could find drugs. According

15

to Lanham, the victim's testimony impermissibly placed his character in issue such that his trial counsel was deficient in failing to move for its exclusion. We disagree.

"As a general rule, evidence of the circumstances surrounding an arrest is admissible if it is relevant to the crimes charged." (Citations and punctuation omitted.) *Scott v. State*, 277 Ga. App. 126, 127 (1) (625 SE2d 526) (2006). Moreover, "although evidence may incidentally put character in issue or be prejudicial, it may be admitted if otherwise relevant." (Citation and punctuation omitted.) *Conyers v. State*, 234 Ga. App. 830, 832 (1) (507 SE2d 842) (1998).

Here, the victim testified that a few weeks after the rape, she was walking at night with her aunt and her aunt's boyfriend near the location of the attack, when Lanham approached her aunt's boyfriend, told the boyfriend he was not from the area, and asked about buying drugs. The victim testified that she recognized Lanham's voice and face as that of her attacker, leading her to call 911 and to Lanham's arrest that day.

Based on the victim's testimony, the circumstances surrounding Lanham's arrest, including his conversation with the aunt's boyfriend, were relevant to the rape charge, given that the circumstances of the arrest showed how the victim came to identify Lanham as her attacker. Furthermore, Lanham's statement that he was not

16

from the area and wanted to buy drugs corroborated the victim's testimony that Lanham was a stranger whom she had never seen before in the area prior to her attack. Accordingly, the victim's testimony regarding Lanham's conversation with her aunt's boyfriend was relevant and admissible as part of the circumstances surrounding his arrest, even if it incidentally placed his character in issue, and Lanham's trial counsel therefore committed no error in failing to object to its admission. See *Scott*, 277 Ga. App. at 127 (1); *Conyers*, 234 Ga. App. at 832 (1). See also *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citations and punctuation omitted).[5]

(f) Lanham further argues that his trial counsel's alleged errors, if considered cumulatively, demonstrate that his representation was so deficient as to constitute ineffective assistance of counsel and require a new trial. "We evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors. Here, even

---

[5] In a related claim of error, Lanham argues that the trial court erred in permitting the sheriff's investigator, over objection from defense counsel, to repeat the victim's contention that Lanham had asked her aunt's boyfriend about drugs. Defense counsel objected to the testimony on the ground that it constituted improper character evidence, and that objection fails for the same reasons discussed above in Division 1 (e).

if trial counsel was deficient in some respects, there is no reasonable probability that, but for those deficiencies, the outcome of [Lanham's] trial would have been different," for all of the reasons previously discussed. (Citation and punctuation omitted.) *Gipson v. State*, 332 Ga. App. 309, 324 (7) (j) (772 SE2d 402) (2015).

2. Lanham also maintains that the trial court erred in considering his prior Georgia misdemeanor convictions during sentencing based on the statements of the prosecutor about those convictions.[6] According to Lanham, the trial court could not consider the prior convictions in the absence of certified copies of those convictions. Lanham further contends that to the extent that his trial counsel waived any objection to the trial court's consideration of the prior misdemeanor convictions, his counsel was constitutionally ineffective.

---

[6] The prosecutor noted during sentencing, over objection, that Lanham had a 2001 criminal domestic violence charge in South Carolina that "shows as a non conviction" and a pending charge in South Carolina for possession of a controlled substance. A trial court may not consider a pending indictment or charges resulting in dismissal or acquittal in imposing sentence. See *Noellien v. State*, 298 Ga. App. 47, 51 (3) (c) (679 SE2d 75) (2009); *McIntosh v. State*, 287 Ga. App. 293, 295 (651 SE2d 207) (2007). But, "there is a presumption, in the absence of a strong showing to the contrary, that the trial judge, when sitting without a jury, separates the legal evidence from facts not properly in evidence in reaching his decision." (Citation and punctuation omitted.) *McIntosh*, 287 Ga. App. at 295. In the absence of evidence to the contrary, we presume that the trial court did not rely upon Lanham's South Carolina charges that were pending or that resulted in dismissal or acquittal. See id.; *Morse v. State*, 277 Ga. App. 67, 69-70 (625 SE2d 489) (2005).

18

The burden is on the [S]tate to produce competent evidence of a prior conviction for purposes of sentencing. Under Georgia law, the best evidence of a prior conviction is a certified copy of the conviction itself. Hence, if the defendant timely objects on best evidence grounds, the [S]tate must produce a certified copy of the prior conviction in order to prove that the conviction occurred.

(Citations and punctuation omitted.) *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009). See *Ramsey v. State*, 218 Ga. App. 692, 693 (4) (462 SE2d 806) (1995). However, "the time to challenge the validity of a prior conviction is at sentencing when the State attempts to prove such conviction." (Citation and punctuation omitted.) *Jones v. State*, 308 Ga. App. 99, 100 (2) (706 SE2d 593) (2011). Consequently, if a defendant does not object at sentencing to oral statements made by the prosecutor regarding a prior conviction and challenge the form of the evidence presented, he waives any objection on appeal that the State was required to introduce certified copies of the conviction. See *Moret v. State*, 246 Ga. 5, 5-6 (3) (268 SE2d 635) (1980); *Head v. State*, 233 Ga. App. 655, 658 (3) (b) (504 SE2d 499) (1998); *Walker v. State*, 204 Ga. App. 269, 269 (419 SE2d 542) (1992).

In the present case, Lanham's counsel did not object at sentencing to the admissibility of the prosecutor's statements regarding his prior Georgia misdemeanor

19

convictions and thus waived his argument on appeal that the State was required to introduce certified copies of those convictions. See *Moret*, 246 Ga. at 5-6 (3); *Head*, 233 Ga. App. at 658 (3) (b); *Walker*, 204 Ga. App. at 269. And, while Lanham alternatively argues that his trial counsel was constitutionally ineffective for failing to object to the prosecutor's statements regarding the prior convictions, Lanham has provided no evidence to demonstrate that the prosecutor misrepresented the terms of those convictions and thus cannot establish prejudice. See *Owens v. State*, 324 Ga. App. 198, 206 (2) (749 SE2d 783) (2013). Under these circumstances, we affirm Lanham's sentence.

*Judgment affirmed. McMillian and Reese, JJ., concur*.