## A02A0195. GLASS v. THE STATE.
(565 SE2d 500)

JOHNSON, Presiding Judge.

A jury found Bruce Lamar Glass guilty of rape and aggravated sexual battery. This out-of-time appeal was filed following our opinion in *Glass v. State*.[1] The appeal alleges (1) the evidence was insufficient to support the verdict, (2) the trial court erred in admitting similar transaction evidence, (3) the trial court erred in its similar transaction charge, (4) the trial court erred in refusing to allow Glass to present evidence of the victim's first offender plea, (5) the trial court erred in denying Glass' *Batson*[2] challenge and in improperly conducting a hearing on the issue, (6) a mistrial should have been granted when a state's witness interjected racial remarks in the presence of the jury, (7) a mistrial should have been granted when a state's witness placed Glass' character into evidence, (8) the trial court erred in allowing the state to question Glass' character witnesses about an incident in another state, (9) the state's attorney committed seven instances of prosecutorial misconduct, and (10) Glass received ineffective assistance of counsel. Because each of these enumerations of error lacks merit, we affirm Glass' convictions.

1. Glass challenges the legal sufficiency of the evidence. On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence; moreover, this Court only determines the legal sufficiency of the evidence; we do not weigh the evidence or determine the credibility of witnesses.[3] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve, and as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[4]

---

[1] 248 Ga. App. 91 (545 SE2d 360) (2001).
[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[3] *Patterson v. State*, 233 Ga. App. 776 (1) (505 SE2d 518) (1998).
[4] *Patterson v. State*, 225 Ga. App. 515 (484 SE2d 317) (1997).

Viewed in the light most favorable to support the verdict, the evidence shows that the 16-year-old victim worked full time at a car wash. Glass, a 34-year-old male, was the manager who hired her. On March 3, 1997, the victim agreed to accompany Glass to his new home in Cobb County to unpack boxes until 1:00 p.m. Glass offered her and her co-worker $50 each for a few hours work. Once en route, however, Glass announced that the co-worker needed to rest before working late that evening and dropped the co-worker off at his home.

Though the victim felt uncomfortable, she remained in Glass' car and continued with the plan to work at Glass' residence. He drove more than an hour to an area unfamiliar to her. Upon arrival, the victim unpacked kitchen items as agreed. She then began unpacking items in the bedroom closet. As the victim unpacked these boxes, Glass began to unbutton her outer shirt. The victim objected, and Glass stopped. Later, however, Glass began rubbing the victim's shoulders. Instead of stopping when the victim asked him to stop, he touched the victim's breast under her shirt. He then removed his hands, and the two engaged in small talk.

Glass encouraged the victim to sit closer to him, told her to relax, and intermittently rubbed her shoulders as they chatted. Then, he pushed the victim facedown on the bed and continued to rub her shoulders over her protests. Glass unclasped the victim's bra and silenced her screams by choking her, again instructing her to relax and remain calm to avoid injury. Glass then thrust his hand into the victim's jeans and forced his fingers into the victim's vagina. After this, Glass allowed the victim to sit up, but he made her lie down on his chest. He stroked her, telling her she was soft and pretty. Because Glass stands six feet five inches and weighs approximately 210 pounds, the victim feared for her life.

When the pager attached to the victim's jeans displayed 1:00 p.m., she reminded Glass it was time to go. At this point, Glass pushed her down, took her pants off, ripped off her underwear, and penetrated her vagina with his penis. The victim struggled, but Glass was too strong. After he ejaculated, Glass insisted that the victim take a "good" shower. He provided her with soap and watched her as she complied.

A medical examination revealed substantial physical evidence of the rape. Vaginal swabs revealed the presence of spermatozoa. DNA testing identified Glass as its source. The examining physician also observed recent lacerations, consistent with digital or penile penetration, both at the entrance to and inside the victim's vagina. The doctor testified that in his experience such injuries are rare and almost certainly indicate the use of force. He also noted a fresh bruise to the victim's left buttock.

The state produced additional evidence of force, introducing the victim's torn panties and broken pager chain. And, the detective who took the original rape report corroborated the victim's testimony. This detective observed the "hysterical" and frightened victim crying "uncontrollably," and noted that her face and neck appeared red and blotchy. The detective saw a fresh injury to the victim's neck, an abrasion consistent with physical pressure applied to the chain she wore.

Initially, Glass denied any sexual contact with the victim. At trial, however, Glass recanted his prior statements, claiming he was scared because he was an African-American accused of raping a Caucasian woman. He testified that the sexual encounter with the victim was consensual, and he denied having rough sex with the victim. However, he could not explain the victim's injuries or emotional state.

To rebut Glass' claim of consent, the state admitted evidence of a subsequent similar transaction. While on bond awaiting trial for the victim's rape, Glass met and briefly dated Lorna Taylor. Taylor, an army sergeant who was visiting Marietta before assuming a new post, testified that Glass raped her in his master bedroom on September 14, 1997, 11 days after the incident at issue in this case. When she resisted his advances, Glass told her to "just shut up . . . and just relax." Afraid she would be injured or killed, she submitted without a struggle to Glass' verbal and physical assault. During the attack, Glass told Taylor she was soft, and he digitally penetrated her vaginal area. After he ejaculated, he forced her to take a bath and watched her do so, giving her Tone soap and telling her "to wash down there."

Once Glass allowed Taylor to leave, she immediately telephoned the police. A detective testified that she appeared to be very afraid. The detective also found corroborating evidence in Glass' home. He located the bar of Tone soap in the bathtub, its empty wrapper in the sink. In addition, the detective photographed the box of Epsom salts on the bathroom counter, a portion of which Glass had initially added to the bath water, along with its residue in the bathtub.

During a pretrial telephone conversation with an investigator, Glass asserted, "[I]t's a conspiracy, it's blackmail. I confided in her and she is blackmailing me because she wanted me to drive her to Virginia." He testified at trial that his sexual relation with Taylor was consensual.

While Glass challenges the credibility of the victim and Taylor by pointing out inconsistencies in their testimony, it is not the function of an appellate court to weigh the evidence, determine the credibility of the witnesses, or resolve conflicts in trial testimony when the suffi-

ciency of the evidence is challenged.[5] Instead, the evidence must be viewed in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

A person commits rape when he has carnal knowledge of a female forcibly and against her will.[7] Aggravated sexual battery is committed when a person intentionally penetrates with a foreign object other than the sexual organ of a person the sexual organ of another without the consent of that person.[8] In this case, the credibility issues were resolved adversely to Glass by the jury, and we find the evidence was sufficient to authorize a rational trier of fact to find Glass guilty beyond a reasonable doubt of rape and aggravated sexual battery.[9]

2. Glass contends the trial court erred in admitting evidence of the incident with Taylor, which the trial court ruled a subsequent similar transaction. Specifically, he argues that the incident did not satisfy the standard set forth in *Williams v. State*.[10] We find no error.

In *Williams*, the Supreme Court detailed three affirmative showings which the state must make before similar transaction evidence can be introduced: (1) identify an appropriate purpose for the introduction of the independent offense or act, (2) show a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter, and (3) present competent evidence that the defendant committed the independent offense or act.[11] The decision to admit a similar transaction into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion.[12]

Glass first asserts that the Taylor incident was not admissible because it placed his character into issue. However, it is well established that evidence of an independent offense or act may be admitted to show a defendant's bent of mind, course of conduct, motive, intent, or lack of mistake.[13] The state offered evidence of the Taylor incident to establish Glass' course of conduct, particularly to prove the bent of mind and intent necessary to overcome the defense of consent, and to corroborate the victim's testimony. These are permissible

---

[5] *Dominguez-Vega v. State*, 253 Ga. App. 562 (1) (560 SE2d 56) (2002); *McIntosh v. State*, 247 Ga. App. 640, 641 (1) (545 SE2d 61) (2001).

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] OCGA § 16-6-1 (a) (1).

[8] OCGA § 16-6-22.2 (b).

[9] *Banks v. State*, 250 Ga. App. 728, 731 (4) (552 SE2d 903) (2001).

[10] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[11] Id.

[12] *Banks*, supra at 730 (3); *Lowe v. State*, 245 Ga. App. 659, 660 (2) (538 SE2d 552) (2000).

[13] *Lamb v. State*, 273 Ga. 729, 731 (1) (546 SE2d 465) (2001).

purposes to justify evidence of other crimes, especially in cases of sexual assault.[14] Moreover, acts occurring after the date of the crime charged can be just as probative as those that have transpired previously.[15]

As for Glass' claim that the Taylor incident was not admissible because of certain dissimilarities with the present incident, "a transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences."[16] And, in cases involving sexual offenses, that rule is to be liberally construed.[17] Here, the incident with Taylor was similar to the present incident in several striking respects so as to warrant its admission. Glass was acquainted with both women and took them both to his residence. The victims rebuffed his sexual advances, but Glass physically overpowered them while instructing them to relax. Glass digitally penetrated and then raped both women, telling each one during the attack that she was soft. After he ejaculated, he made both victims wash their bodies while he watched them. In addition, he claimed both incidents were consensual. These similarities were sufficient to merit the jury's consideration of the Taylor incident.

Glass next argues that the evidence is inadmissible because the state failed to produce competent evidence that Glass committed any crime against Taylor. Specifically, he argues that more than one year had passed without any formal charges made against him. However, prosecution is not a prerequisite to the presentation of similar transaction evidence. "It is the similarity of the facts of the defendant's . . . conduct to the facts of the case being tried that is the critical element of this type of evidence, not the adjudication of any charges which might have been brought as a result of the . . . conduct."[18] The trial court did not abuse its discretion in finding the subsequent sexual assault on Taylor sufficiently similar to the charged offense to be probative for the allowable limited purpose for which it was admitted.

3. Glass next contends that the trial court erred in its similar transaction charge to the jury because the language in the charge expanded the limited purposes for which similar transaction evi-

---

[14] *Culver v. State*, 230 Ga. App. 224, 229 (3) (496 SE2d 292) (1998); *McBee v. State*, 228 Ga. App. 16, 18-19 (1) (491 SE2d 97) (1997).

[15] *Scott v. State*, 219 Ga. App. 906, 908 (3) (467 SE2d 348) (1996).

[16] (Citations omitted.) *Lamb*, supra.

[17] *Roberts v. State*, 242 Ga. App. 621, 626 (2) (530 SE2d 535) (2000); *Brooks v. State*, 230 Ga. App. 846, 847 (1) (498 SE2d 139) (1998).

[18] *Davis v. State*, 269 Ga. 276, 278 (2) (496 SE2d 699) (1998); see also *Jones v. State*, 159 Ga. App. 634 (1) (284 SE2d 651) (1981) (no error in admitting evidence of prior rape charge resulting in acquittal).

dence can be used. In support of this contention, Glass relies on the case of *Rivers v. State*.[19] However, the error which caused reversal in *Rivers* was not duplicated here. In *Rivers*, the jury was permitted to use the similar acts to show "the crimes charged in the case" or any "element of the offense charged in this indictment."[20] Here, the trial court twice limited the jury's consideration of the similar transaction evidence to the state of mind and knowledge or intent of the defendant. In addition, the trial court instructed the jury that "[s]uch evidence, if any, may not be considered by you for any other purpose." There was no error.[21]

4. Glass contends the trial court erred in granting the state's motion in limine to prevent evidence of the victim's 1998 first offender plea for the felony of possession of methamphetamine. According to Glass, since the victim was still serving her probated sentence at the time she testified at trial, her first offender case was still pending and she did not yet have first offender status. This being the case, Glass argues he should have been able to cross-examine the victim concerning the criminal charge because it was still pending against her. We disagree.

Contrary to Glass' contention, the first offender record of a person currently serving a first offender sentence may not be used to impeach the first offender on general credibility grounds because no adjudication of guilt has been entered.[22] Since Glass has not made any showing that the victim's first offender record could have been used to impeach her for a constitutionally protected reason, the trial court did not err in excluding evidence of the victim's first offender plea.

5. Glass contends the trial court erred by denying his *Batson* challenge. The record reveals that after the state used its peremptory challenges to strike the only two African-American jurors on the jury panel, the trial court on its own initiative began the *Batson* analysis. It asked the state the reason for its strikes, and the state gave race-neutral reasons. According to the record, one of the African-American jurors struck by the state had a brother who was convicted of shooting someone, served time in prison, had his probation revoked, and was on house arrest. The other African-American juror struck by the state had her only son incarcerated for two years on felony drug charges. Since such personal experiences might bias a juror against

[19] 236 Ga. App. 709 (513 SE2d 263) (1999).
[20] (Emphasis omitted.) Id. at 710 (1).
[21] See *Nickerson v. State*, 248 Ga. App. 829, 833 (2) (d) (545 SE2d 587) (2001); *Griffin v. State*, 241 Ga. App. 783, 785 (4) (a) (527 SE2d 577) (2000).
[22] *Davis*, supra at 277 (2).

the state, familial involvement with the criminal justice system constitutes a race-neutral reason for striking a potential juror.[23]

The trial court then invited Glass' trial counsel's response, and he argued that the state's reason was pretextual because it was not applied to Caucasian jurors. At this point, the state noted that it had struck at least one similarly situated Caucasian juror and distinguished the circumstances of the accepted jurors from the excused jurors. As for other Caucasian jurors not struck by the state, the state explained that it was a question of degree; the state retained jurors who knew very little about the circumstances of the criminal case, seemed pleased with the outcome, or indicated only an arrest or a misdemeanor conviction within the family attenuated as to time.

After further discussion, the trial court allowed the peremptory strikes to stand, concluding that the state set forth racially neutral reasons for striking the two African-American prospective jurors. We find no procedural error in the court's *Batson* analysis.[24]

6. The trial court did not err in refusing to grant a mistrial when a state's witness noted on redirect that Glass had made racial remarks about Caucasians to her. The record shows that the witness was asked what Glass said after she made a comment about a sign in his garage which indicated parking was for African-Americans only. The witness replied, "He just made different comments about white people." The trial court sustained Glass' objection and instructed the jurors to disregard the last question and response. The trial court told the jury, "That will not be evidence and you should not consider it as evidence."

"It is undeniably the right of every person accused of crime in this State to have a fair and impartial trial, free from any demonstration or disorder of a nature calculated to affect prejudicially the jurors trying his case."[25] However, given the circumstances of this case, we are not prepared to say that the refusal of the trial judge to declare a mistrial, after giving curative instructions, was erroneous.[26] "Motions of this character are addressed to the discretion of the trial judge; and, unless it can be shown that such discretion has been abused and some positive injury done by the occurrence complained of, the discretion of the trial judge will not be controlled."[27] And, we have previously held that curative instructions were an adequate remedy when a witness places the defendant's character into evi-

---

[23] *Slade v. State*, 270 Ga. 305, 306 (1) (509 SE2d 618) (1998); *Griffeth v. State*, 230 Ga. App. 298, 300 (496 SE2d 309) (1998).

[24] See *Medina v. State*, 247 Ga. App. 821, 822 (1) (a) (545 SE2d 366) (2001).

[25] (Citation and punctuation omitted.) *Sparks v. State*, 232 Ga. App. 179, 181 (2) (501 SE2d 562) (1998).

[26] See *Fletcher v. State*, 273 Ga. 737, 738 (2) (545 SE2d 921) (2001).

[27] (Citations and punctuation omitted.) *Sparks*, supra.

dence.[28] Here, we do not find that the trial court abused its discretion in refusing to grant a mistrial.[29]

7. Glass contends the trial court erred in refusing to grant a mistrial when a state's witness placed his character into evidence. We find no error.

The record shows that in response to questioning regarding why Taylor did not pursue criminal action against Glass, a detective testified: "She again stated that she did not wish to pursue criminal action against Mr. Glass; that in talking to family members, they had told her that he needed psychiatric care more than he needed jail; that he had had a slight prior problem and he had ——." At this point, Glass' trial counsel requested a mistrial. The trial court denied the request for a mistrial, but instructed the jury to "disregard the last response. It will not be evidence in the case."

As we stated above in Division 6, whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge.[30] Curative instructions are an adequate remedy when a witness improperly places a defendant's character into evidence by testifying about his prior convictions or bad acts.[31] In this case, the detective's reference to Glass' need for psychiatric care and any prior problems which Glass may have had was given in the context of Taylor's decision not to pursue her action against Glass. The comments were actually Taylor's comments and not those of the detective, and the comments regarding psychiatric care were cumulative of other testimony previously given by Taylor at trial. Moreover, the trial judge promptly instructed the jury to disregard the testimony. Under these circumstances, we conclude that the trial court did not abuse its discretion in deciding to give a curative instruction to the jury rather than grant a mistrial.

8. Glass asserts the trial court erred in allowing the state to question his character witnesses regarding a sexual assault complaint against Glass in Glendale, Arizona. The prosecutor asked these witnesses, "[w]ould it change your opinion of Mr. Glass if you knew that in April of 1995 in Arizona he was investigated for the sexual assault of a [victim] that occurred in his home?" Glass argues the state had no factual basis for the complaint. We disagree.

The record shows that in its similar transaction motion, the state provided the names of three Glendale, Arizona, investigators, a physician, and the name and address of the sexual assault victim. At

---

[28] See *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

[29] See *Mosier v. State*, 218 Ga. App. 586, 589-590 (4) (462 SE2d 643) (1995); *Sanders v. State*, 181 Ga. App. 117, 121 (2) (351 SE2d 666) (1986).

[30] *Sims*, supra.

[31] Id.

trial, the prosecuting attorney read from the police report, which documented Glass' description and date of birth. And, the prosecutor stated on the record that Glass had been the subject of a rape investigation and that the victim was available as a witness. It is well established that where the state can show that a reliable basis exists, the prosecuting attorney can inquire whether a character witness has heard about arrests, convictions, and uncharged specific bad acts of the defendant.[32] Since there is no indication in the record that the state did not have a factual basis for its question to the character witnesses, the question was proper to test the witnesses' knowledge of Glass.[33]

9. Glass contends his motion for new trial should have been granted because of prosecutorial misconduct committed during his trial. He alleges seven instances of misconduct.

(a) Glass contends the assistant district attorney called one of Glass' key witnesses and dismissed him from attending the trial, intentionally misleading the witness and preventing him from testifying on behalf of Glass. However, the record shows that the witness volunteered to testify on Glass' behalf, but chose to leave town on a business trip after Glass' attorney instructed him to appear. According to the witness, he told Glass' attorney he wanted to testify and that he did not need a subpoena because he was happy to come testify. Glass' attorney then called the witness and instructed him to come to court on a specific day. Subsequently, an assistant district attorney called to interview the witness and told him that the district attorney's office did not need him. The witness then left the jurisdiction without contacting the defense, with whom all his previous contact had been, for any further instruction or clarification.

This telephone conversation did not amount to a knowing and improper excusal by the state. The assistant district attorney merely indicated that the witness was not needed as a state's witness. He did not instruct the witness to avoid a subpoena from the defense. And, in fact, the witness had not received a subpoena from the defense. We find no prosecutorial misconduct.

(b) Glass contends prosecutorial misconduct occurred when the prosecutor stated during voir dire that there were two victims in the case. However, he does not give us any record citation for this argument, and he does not provide any citation of authority in support of this argument. Therefore, this argument is deemed abandoned.[34]

---

[32] *Medlock v. State*, 264 Ga. 697, 698-699 (449 SE2d 596) (1994).
[33] See *Strickland v. State*, 223 Ga. App. 772, 778 (2) (479 SE2d 125) (1996); *Chisholm v. State*, 199 Ga. App. 746-747 (1) (406 SE2d 112) (1991).
[34] See Court of Appeals Rule 27 (c) (2), (3).

(c) Glass next asserts prosecutorial misconduct occurred when the prosecutor solicited racial remarks from a witness. Once again, however, Glass has failed in his two-sentence argument to provide any citation to the record or any citation of authority. We presume Glass is referring to the comment discussed in Division 6. This comment was vague, and Glass has provided no evidence that the prosecutor intentionally solicited any racial comment from the witness. "A charge of prosecutorial misconduct is a serious charge and is not to be lightly made; having raised it, appellant has the duty to prove it by the record and by legal authority."[35] This Glass has failed to do. There was no error in denying Glass' motion for new trial on this ground.

(d) Glass contends prosecutorial misconduct occurred when the prosecutor asked his character witnesses whether their opinions would change if they knew he was investigated for sexual assault in Glendale, Arizona, or if he had murdered someone. As for the question regarding the sexual assault in Arizona, the prosecutor's question testing the opinions of character witnesses provides no basis for a claim of prosecutorial misconduct. There is no dispute that Glass introduced evidence of good character through his witnesses. Therefore, it is clear the state was permitted to impeach Glass' character witnesses by asking questions related to bad acts committed by Glass which the state could prove.[36] Although the character witnesses stated they did not know of the bad acts, this testimony is still evidence which the jury may consider for impeachment purposes.[37]

As for the prosecutor's question regarding murder, the record reveals that the prosecutor asked one of Glass' character witnesses whether she would alter her opinion after hearing about the sexual assault investigation in Arizona. The following colloquy then took place:

A: When I have an opinion of someone, unless something has been done to me, my opinion will not change.
Q: Okay. So as long as a person doesn't directly do something to you, your opinion's not going to change?
A: Whatever I think about an individual?
Q: Uh-huh.
A: I'm a very positive person. I like to keep that.
Q: Okay. Well, surely something would change your opinion.

---

[35] (Citation and punctuation omitted.) *Roberts v. State*, 267 Ga. 669, 671 (3) (482 SE2d 245) (1997).
[36] See Division 8, supra.
[37] See *Strickland*, supra.

I mean, what if you found out that he murdered somebody, would that change your opinion?
A: It depends.
Q: Nothing further.

Clearly, this rhetorical question does not amount to prosecutorial misconduct given the context of the question.

(e) Glass next contends that prosecutorial misconduct occurred twice during closing argument when the prosecutor stated that Glass was out on bond and "did it again" and when the prosecutor again mentioned the word murder when discussing Glass' character witnesses. However, the record shows that Glass failed to object to either instance complained of on appeal. Consequently, these arguments are not preserved for our review.[38] The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct.[39]

(f) Glass also asserts an alleged instance of prosecutorial misconduct occurring during closing argument to which his trial counsel did object. Specifically, Glass argues that the prosecutor attempted to ask the jurors to put themselves in the position of a party or to compare the situation of a party with their own. The trial court sustained Glass' objection. Given the circumstances surrounding the comment, Glass has not borne his burden to show error affirmatively[40] and to persuade us that such alleged misconduct prejudiced his right to a fair trial.[41]

10. Glass asserts his counsel was ineffective because he failed to (a) challenge the array of jurors, (b) make a proper *Batson* challenge, (c) subpoena crucial witnesses, (d) request a continuance to obtain a key witness, (e) file a motion in limine requesting the state to refrain from using the term "rape," (f) subpoena the victim's psychiatric history, (g) move for a mistrial when a witness testified to the ultimate issue, (h) renew an objection and ask for a mistrial after Taylor made prejudicial remarks in the presence of the jury, (i) object and move for a mistrial when the state asked a character witness an irrelevant question, and (j) request first offender treatment.

To establish a claim of ineffective assistance of counsel, Glass must show both that his trial counsel's performance was deficient

---

[38] *Ledford v. State*, 264 Ga. 60, 67 (18) (a) (439 SE2d 917) (1994); see also *Scott v. State*, 242 Ga. App. 553, 556 (3) (530 SE2d 257) (2000); *Tuten v. State*, 242 Ga. App. 223, 224-225 (4) (529 SE2d 221) (2000).

[39] *Ledford*, supra; *Scott*, supra.

[40] See *Hayes v. State*, 236 Ga. App. 617, 619 (3) (512 SE2d 294) (1999) (a "golden rule" objection is misplaced if counsel's argument asks the jurors to put themselves in the place of someone other than the victim or the defendant).

[41] *Lamb v. State*, 267 Ga. 464, 465-466 (5) (479 SE2d 719) (1997).

and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.[42] To succeed in his claim, Glass must overcome the strong presumption that his counsel's performance fell within the broad range of reasonable professional conduct and that his counsel's decisions were made in the exercise of reasonable professional judgment.[43] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.[44] Absent clear error and harm, we will affirm the trial court's finding that Glass did not receive ineffective assistance of counsel.[45] With these principles in mind, we turn to the specifics of Glass' claims.

(a) Glass argues that his trial counsel was ineffective by failing to challenge the jury array. He points out that the jury panel had thirty-two Caucasian members and only two African-American members. However, "[t]here is no constitutional guarantee that . . . grand or petit juries, impaneled in a particular case[,] will constitute a representative cross-section of the entire community."[46] To successfully challenge a jury array based on racial composition, purposeful discrimination must be shown.[47] That burden is not carried by merely presenting evidence that a single jury panel contained a disproportionately small percentage of African-Americans compared to the population at large.[48] Rather, the proper inquiry "concerns the procedures for compiling the jury lists and not the actual composition of the grand or traverse jury in a particular case."[49]

Here, Glass failed to establish any flaw in the selection process, such as manipulation, misuse, or systematic exclusion of African-American jurors in Cobb County's jury selection process.[50] Rather, the evidence all points to the fact that Cobb County's method of selecting jury panels avoids against intentional discrimination. Thus, even if Glass' jury panel was underrepresentative of African-American jurors, Glass has not established that his trial counsel

---

[42] *Bowley v. State*, 261 Ga. 278, 280 (4) (404 SE2d 97) (1991).

[43] *Williams v. State*, 248 Ga. App. 316, 322 (7) (546 SE2d 74) (2001).

[44] *Hammond v. State*, 264 Ga. 879, 880 (1) (452 SE2d 745) (1995).

[45] See *Guertin v. State*, 243 Ga. App. 322, 323 (1) (533 SE2d 159) (2000).

[46] *Campbell v. State*, 240 Ga. 352, 356 (II) (5) (240 SE2d 828) (1977); *Singleton v. State*, 229 Ga. App. 135, 136 (1) (493 SE2d 556) (1997).

[47] See *McElroy v. State*, 244 Ga. App. 500, 503 (2) (b) (536 SE2d 188) (1999).

[48] See id.

[49] *Patterson v. Balkcom*, 245 Ga. 563, 565 (1) (266 SE2d 179) (1980); *Lane v. State*, 239 Ga. App. 230, 231 (2) (b) (520 SE2d 705) (1999).

[50] See generally *Campbell*, supra; *Riddles v. State*, 251 Ga. App. 525, 526-527 (1) (554 SE2d 737) (2001).

could have challenged the jury array successfully.[51] We find no unprofessional lapse from trial counsel's deliberate choice not to pursue a written challenge to Glass' jury array.

(b) Glass argues that his trial counsel was ineffective because, during the *Batson* hearing, he failed to argue that the state used familial criminal history as a ruse and failed to enumerate similarly situated Caucasian jurors not struck by the state. However, the record shows that Glass' trial counsel did, in fact, urge this ground at trial. And, the record further shows that at least one similarly situated Caucasian juror was struck by the state. As for other Caucasian jurors not struck by the state, the state explained that it was a question of degree; the state retained jurors who knew very little about the circumstances of the criminal case, seemed pleased with the outcome, or indicated only an arrest or a misdemeanor conviction within the family attenuated as to time. Glass' trial attorney was not ineffective in this regard.

In addition, Glass has not shown, nor does the record indicate, that the conclusion of the trial court would have been different had the *Batson* hearing occurred subsequent to a timely motion by his trial counsel rather than on the court's own initiative.[52]

(c) Glass asserts his trial counsel failed to subpoena certain witnesses whose testimony was crucial to the defense. The record, however, is devoid of any evidence suggesting that the testimony of these witnesses would have bolstered the defense or changed the outcome of the trial. Decisions concerning which defense witnesses to call are a matter of trial strategy, within the exclusive province of trial counsel, after consultation with the client.[53] We affirm the trial court's finding that trial counsel's tactical decision did not amount to deficient performance.

(d) Glass contends his trial counsel was ineffective for failing to request a continuance or ask for an attachment of Joe Cosby, a witness under subpoena. It is undisputed that Cosby failed to appear pursuant to Glass' subpoena. However, trial counsel testified at the hearing on Glass' motion for new trial, "we lost him and couldn't find him . . . and we were trying to determine whether or not his testimony was going to be that important that we wanted to postpone the case in order to try and find him." Ultimately, trial counsel made the decision to proceed to trial in Cosby's absence. We do not find that this strategic decision amounted to ineffective assistance of counsel. While defense counsel testified that Cosby would have testified about a prior false allegation by the victim, the allegation was for sexual

---

[51] See *McElroy*, supra.

[52] See *Trammel v. State*, 265 Ga. 156, 157 (2) (454 SE2d 501) (1995).

[53] *Williams*, supra, 248 Ga. App. at 322 (7) (a).

harassment rather than any physical attack, the defense attorney asked at least one other witness about this complaint at trial, and the victim had never made a prior complaint to the authorities about sexual assault.

(e) Glass asserts his trial counsel was ineffective for failing to file a motion in limine to prohibit the use of the term "rape" because his defense at trial was consent. While such a motion could have been filed,[54] we do not find the failure to file such a motion to constitute ineffective assistance of counsel in this case. Here, the trial court gave both pretrial and post-trial instructions clearly forming the issue for the jury's determination.[55] The jury was instructed to decide whether the victim consented to sex or was raped.

(f) Glass asserts his trial counsel was ineffective for failing to subpoena the victim's psychiatric counseling records. However, while speculating that "it is possible that the alleged victim suffered from excessive lying, had difficulty distinguishing between fact and fiction, suffered from hallucinations, or any number of other mental illness," Glass has produced no evidence of necessity to overcome the victim's privilege of confidentiality.[56] He has not shown that the victim's mental condition or treatment was relevant to, or affected the credibility of, her rape allegations.[57] In the absence of such evidence, Glass has failed to demonstrate that trial counsel had any reason to obtain the victim's psychiatric history.[58] This claim of ineffective assistance of counsel lacks merit.

(g) The record shows that upon being questioned regarding the victim's prior consistent statements to him, a detective began a narrative concerning what the victim told him. At the end of the narrative, the detective stated, "Her pager and pager chain was damaged during the assault, but then he, of course, was successful in his rape of [the victim]." Glass contends his trial counsel was ineffective for failing to object and move for a mistrial after the detective testified to the ultimate issue in the case. We find no error requiring reversal.

At the hearing on Glass' motion for new trial, trial counsel testified that while he would normally object where testimony involved the ultimate issue, he might have preferred not to call attention to the testimony and have ignored the testimony for strategic reasons. Absent evidence to the contrary, the decision not to object to certain evidence is presumed strategic and provides no basis for an ineffec-

---

[54] See *McIntosh,* supra at 644 (4).

[55] *Marks v. State,* 237 Ga. 277 (1) (227 SE2d 334) (1976).

[56] See *Bobo v. State,* 256 Ga. 357, 358-360 (3) (349 SE2d 690) (1986).

[57] See *Davidson v. State,* 232 Ga. App. 250, 252-253 (2) (501 SE2d 510) (1998).

[58] See generally *Morris v. State,* 226 Ga. App. 535, 539 (2) (b) (488 SE2d 685) (1997).

tive assistance claim.[59] The trial court was authorized to find that the decision not to object was reasonable trial strategy.[60]

(h) Glass contends his trial counsel was ineffective for failing to renew a motion for mistrial after the trial court gave curative instructions to disregard testimony that Glass "just made different comments about white people." First of all, as we found in Division 6, the trial court did not err in refusing to grant a mistrial after the witness made the objected-to comment. It is highly doubtful under the circumstances that trial counsel's attempt to renew his motion for mistrial would have been effective; thus, Glass cannot show the requisite harm necessary to prevail on this claim.

Moreover, Glass has not made an affirmative showing that trial counsel's failure to renew the motion for mistrial was indicative of ineffectiveness and was not merely an example of a conscious and deliberate trial strategy.[61] Absent evidence to the contrary, we must presume that trial counsel's decision was a matter of trial strategy based on his assessment that the court's curative instruction was sufficient.[62] In the present case, this was a decision in the exercise of professional judgment which did not fall below an objective standard of reasonableness.[63]

(i) Glass contends he received ineffective assistance of counsel because his trial attorney failed to object and move for a mistrial when the state asked his character witness whether she would alter her opinion if she found out Glass had murdered someone. As we previously discussed in Division 9 (d), this rhetorical question does not amount to prosecutorial misconduct given the context of the question. Thus, Glass' trial counsel had no basis for an objection, and we cannot find that he was ineffective for failing to object to the comment.

Moreover, Glass' trial counsel testified in the hearing on Glass' motion for new trial that while he would normally object to anything that sounds like murder, "[s]ometimes you don't want to call attention to it." Thus, absent evidence to the contrary, we must presume that trial counsel's failure to object was due to a matter of trial strategy or tactics and not due to his ineffectiveness.

(j) Glass asserts trial counsel was ineffective for failing to request first offender treatment for Glass. However, Glass has offered no proof that his trial counsel disregarded any instruction to request first offender treatment. As the record reflects, trial counsel

[59] *Cunningham v. State*, 244 Ga. App. 231, 234 (3) (535 SE2d 262) (2000).
[60] See *Allen v. State*, 272 Ga. 513, 516 (6) (b) (530 SE2d 186) (2000).
[61] *Gazaway v. State*, 210 Ga. App. 540, 541-542 (1) (c) (436 SE2d 738) (1993).
[62] *Swint v. State*, 250 Ga. App. 573, 574 (552 SE2d 504) (2001).
[63] *Martin v. State*, 268 Ga. 682, 686 (10) (492 SE2d 225) (1997).

knew he had a right to request first offender status, but chose not to because, based on the nature of the charges, he did not believe the trial judge would grant the request. The trial judge's sentence of 40 years lends credence to trial counsel's judgment. We find no unprofessional lapse from trial counsel's deliberate choice not to pursue first offender status for Glass.

Moreover, the grant or denial of first offender treatment is entirely within the discretion of the trial court.[64] Yet, Glass has failed to demonstrate that the trial court would have favorably considered a request for such treatment. He has, therefore, failed to show any harm even if we do find that trial counsel was ineffective in this regard. This claim of ineffectiveness of counsel lacks merit.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED MAY 3, 2002 —
RECONSIDERATION DENIED MAY 16, 2002 — 

*Louise T. Hornsby*, for appellant.
*Patrick H. Head, District Attorney, Ann B. Harris, Amy H. McChesney, Assistant District Attorneys*, for appellee.

