A05A0217. BUCHANAN v. THE STATE.
(614 SE2d 786)

ELLINGTON, Judge.

A DeKalb County jury found Byron Buchanan guilty of eleven counts of armed robbery, OCGA § 16-8-41 (a), four counts of aggravated assault, OCGA § 16-5-21 (a), and two counts of false imprisonment, OCGA § 16-5-41 (a). Buchanan appeals from the denial of his motion for new trial, contending he received ineffective assistance of trial counsel. Finding no reversible error, we affirm.

To prevail on a claim of ineffective assistance of counsel, an appellant must show both that counsel's performance was deficient

and that but for this deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffective assistance claim. *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997). In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999). We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result. *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." (Citation omitted.) *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

The DeKalb County grand jury indicted Buchanan for eighteen counts of armed robbery, four counts of aggravated assault, and two counts of false imprisonment. The twenty-four-count indictment pertained to six separate incidents that occurred within a five-mile radius of each other in the Buford Highway area of DeKalb County, over a period of a month, and involved eighteen Hispanic individuals. The State prosecuted all the crimes together, contending they were signature crimes which were admissible to prove identity. See *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989).

Viewed in the light most favorable to the jury verdict,[1] the record reveals the following. The first incident occurred on January 7, 2001, when a person described as a tall, strong, bald, black man robbed Sergio Molina while Molina was painting an apartment building on Buford Highway. The robber was accompanied by a woman. Molina testified that the robber aimed a chrome gun at him, forced him to the floor, and took money from his wallet. The robber and the woman left together in a light, metallic blue car. Molina was unable to identify Buchanan as his robber. The jury acquitted Buchanan of this armed robbery count.

Around 10:00 p.m. on January 12, 2001, as they were watching television in their Buford Highway apartment, Amilcar Barrerra and Eliceo Rodriguez heard a knock at their front door and a woman speaking English. Because they did not understand what the woman was saying, they opened the door. As they did, a tall, big, black man who was standing behind the woman, barged inside. He brandished a "silver-looking" gun and forced the two to lie down on the floor. The

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

robber took their wallets and Rodriguez's cell phone. The robber and the woman left in a gray or white car. Rodriguez identified Buchanan in court as the robber. The jury found Buchanan guilty of the armed robberies of Barrerra and Rodriguez.

Around 10:30 p.m. on January 28, 2001, as Angel Gutierrez and Jorge Jimenez Hernandez were watching television, a woman knocked at the door of their home in the Colony Apartments near Buford Highway. As they opened the door for the woman, a tall, strong, bald, black man forced his way inside the apartment. He pointed a gun at the men and forced them to lie on the floor. The woman went upstairs and then came back and told the robber that other people were in the home. The robber brought Manuel Jimenez, Cipriano Espinoza, and Eduardo Hernandez downstairs and made them lie on the living room floor also. When Gutierrez looked at the robber, the robber kicked him in the ribs. Gutierrez positively identified Buchanan as the robber from a photographic lineup and at trial. Gutierrez testified that he saw the robber take his and Manuel Jimenez's wallets. The robber also took $100 from Jorge Jimenez Hernandez and the telephones from the apartment. Manuel Jimenez saw the robber leave in a blue car.

Anthony Jones, Buchanan's co-defendant, testified that he was waiting in the car during the January 28 robbery. He testified that Buchanan and a woman called "Little Bit," went to the apartment. After about 15 minutes, they ran from the apartment to the car, shouting: "Crank up, let's go, Red." Jones testified that Buchanan returned with a couple of wallets and was rifling through them for cash as he sat in the car. A witness told a police officer who responded to the robberies that he saw a tall, bald, black man running from the crime scene toward an old, light blue Ford Escort, which was driven by a black man named "Red." A black female accompanied them. Because no one testified that anything of value was taken from Espinoza or Eduardo Hernandez, the court struck from the verdict form the armed robbery counts pertaining to those victims. The jury found Buchanan guilty of the armed robberies of Gutierrez, Jorge Jimenez Hernandez, and Manuel Jimenez.

On January 30, 2001, Oscar Cruz and Wilfredo Rivera shared an apartment in the Colony Apartments near Buford Highway. Cruz testified that when Rivera opened the door for a woman who had knocked at their door, a man barged in and pointed a gun at him and Rivera, forced them to the floor, and demanded money. The woman walked around the apartment going through their belongings. The robber took money, a watch, and a ring from Cruz, jewelry from Rivera, and two phones from the apartment. Cruz told police that the robber was a tall, black male accompanied by a smaller black female. Although Cruz could not identify Buchanan from a photographic

lineup, he identified him at trial. The jury found Buchanan guilty of the armed robbery and aggravated assault of Cruz and Rivera.

On February 2, 2001, Ronay Escobar was living at the Winn Crossing Apartments near Buford Highway with several other people, including Ruben Mendez and a man he knew as Joventino. Escobar testified that while he was resting upstairs, he heard unusual noises coming from downstairs. When he went to investigate, he saw a tall, strong, black man pointing an aluminum-colored gun at him and the group of people downstairs. The man was accompanied by a woman. She told the men to hand over their money. She and the gunman took money from Mendez and Joventino, whose last name Escobar could not remember. The robber kicked Mendez in the ribs. The robber and the woman left together in a gray car with a vinyl top. Escobar identified Buchanan as the robber from a photographic lineup. The court struck from the verdict form those counts of the indictment that pertained to victims other than Mendez and Joventino. The jury found Buchanan guilty of the armed robberies of these two victims.

On February 4, 2001, Leonardo Dileone and his pregnant wife, Sylvia Veron, were resting in bed when they heard the doorbell to their apartment ring several times. When Dileone answered the door, someone shoved the door open, pinning Dileone against the wall. A tall, black man forced his way into the home. He hit Dileone on the head with a gun, knocking him unconscious for a few moments. When he came to, Dileone saw the robber dragging his naked wife from the bed and throwing her to the floor. Dileone saw a woman with the robber. The robber waved his gun at Dileone and told him to sit on the bed. The robber then asked him: "Where is your money? Where is your money?" The gunman took $300, computers, credit cards, and a television satellite dish from the victims. The robber then forced Dileone and his wife into the bathroom and locked them inside. Dileone testified that a third person briefly opened the bathroom door, peered in, and then locked it again. This third person was co-defendant Jones, who testified that he, Buchanan, and Little Bit went to an apartment near Buford Highway on February 4. At Little Bit's request, Jones helped them carry a computer out of the apartment. He testified that he also looked in the bathroom and saw a man and woman holding on to each other and crying. Dileone identified Buchanan as the robber from a photographic lineup and at trial. The jury found Buchanan guilty of the armed robbery, the aggravated assault, and the false imprisonment of these two victims.

A detective who investigated the robberies testified he found the cars used by the robbers through license tag information provided by witnesses. The police located a light blue Mercury Topaz, which is similar in size and style to a Ford Escort, and a silver Cadillac with

a vinyl roof. Both cars were traced to the home of Bertha Mathews, a woman with whom both Buchanan and Jones had stayed. A witness testified that Buchanan and Jones had each driven either one or both of the cars. They had also been seen in the company of a petite woman. The police found Jones in Mathews' basement and arrested him. He pled guilty to the charges against him and agreed to testify for the State at trial.

After hearing Buchanan's motion for new trial on the issue of ineffective assistance of counsel, the trial court concluded that the evidence against Buchanan was overwhelming. We agree.

Buchanan contends he received ineffective assistance of counsel because his attorney (1) failed to challenge certain witness identifications of him; (2) elicited a damaging in-court identification from a witness; (3) failed to move for a directed verdict on Counts 7 through 9, 11, 12, 20, and 21; (4) alerted the State to damaging evidence from Jones; (5) failed to properly impeach Jones with his prior criminal history; and (6) failed to argue that certain offenses merged.

1. Buchanan contends his trial counsel should have challenged the out-of-court identifications made by Escobar and Gutierrez from a photographic array because the array was unduly suggestive. Buchanan also contends the in-court identification made by Cruz was tainted because the witness observed Buchanan being taken to the restroom by deputies during a break in the proceedings.

"An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator or is the equivalent of the authorities telling the witness, 'This is our suspect.' " (Citations and punctuation omitted.) *Williams v. State*, 275 Ga. 622, 623 (2) (571 SE2d 385) (2002).

(a) In this case, the detective put together an array containing six photographs that depicted individuals with similar characteristics. All were bald African-American males of a similar age, with the same muscular build, head shape, skin tone, facial hair, and expression. The photographs were also alike in that they were the same size and were head shots taken against the same neutral background. Although Buchanan was wearing a patterned shirt, another individual in the array was also wearing a patterned shirt. This and the fact that Buchanan's head was canted slightly to one side are minor differences that did not cause the photographic array to be impermissibly suggestive. *Williams v. State*, 275 Ga. at 623 (2); *Daniels v. State*, 207 Ga. App. 689, 691 (4) (428 SE2d 820) (1993); *Bonds v. State*, 203 Ga. App. 51, 52 (1) (416 SE2d 329) (1992); *James v. State*, 157 Ga. App. 645, 646 (2) (278 SE2d 187) (1981). The photographic array was included in the record, and based upon our review of it, we conclude that the trial court would have been authorized to find that there was

no impermissible suggestiveness. *Williams v. State*, 275 Ga. at 623 (2); *Shakim v. State*, 211 Ga. App. 199, 200 (1) (438 SE2d 673) (1993). Therefore, Buchanan has failed to show that his counsel was deficient in failing to challenge the identifications made from the photographic array on the basis that the array was impermissibly suggestive. *Brewer v. State*, 224 Ga. App. at 657-658 (2).

(b) Cruz was not able to identify Buchanan from the photographic array; however, he did identify Buchanan in court. Buchanan's attorney cross-examined Cruz, challenging his in-court identification on several bases. Buchanan contends on appeal that Cruz's in-court identification was tainted because, during a break in the trial, Cruz saw the defendant walking to the restroom with deputies. Trial counsel raised this issue shortly after Cruz's testimony and shortly after he learned of the incident. After hearing from the assistant district attorney and a witness, the trial court concluded that nothing improper had transpired. Nevertheless, Buchanan contends his attorney should have moved for a mistrial. We disagree.

Buchanan presents no evidence demonstrating that the circumstances of Cruz's brief observation suggested that Buchanan was the robber any more than seeing him sitting at the defense table. Simply seeing a defendant inside a court building walking to the restroom accompanied by deputies does not automatically taint a witness's in-court identification. See *Manning v. State*, 162 Ga. App. 494 (1) (292 SE2d 95) (1982) (in-court identification not impermissibly tainted by the fact that defendant was the only young black male in the courtroom at the time). Moreover, Cruz testified that he had an opportunity to view his assailant during the robbery. He explained that he failed to make an identification from the photographic array because he was nervous. When he saw Buchanan in court, however, he remembered the "way he looks, his eyes." The identification was not constitutionally tainted so as to be inadmissible. Therefore, had Buchanan's attorney moved for a mistrial, the trial court would have been authorized to deny it and to admit the in-court identification, leaving its weight and credibility to the jury to be considered with the other evidence in the case. Id.; see also *West v. State*, 218 Ga. App. 341 (1) (461 SE2d 300) (1995) (failure to identify defendant from photographic array does not preclude in-court identification). Buchanan has failed to carry his burden of showing that counsel's performance was deficient. *Brewer v. State*, 224 Ga. App. at 657-658 (2).

2. Buchanan contends his trial counsel's performance was deficient because counsel elicited an identification from Eliceo Rodriguez on cross-examination. On direct examination, Rodriguez testified that he saw the robber only briefly and that if he saw him again, he

did not believe he could identify him. On cross-examination, Rodriguez also admitted he was unable to identify Buchanan from the photographic array assembled by the investigator. After having Rodriguez confirm that he was unable to identify the robber, defense counsel asked Rodriguez to look at Buchanan and to say whether he was the robber. At this point, Rodriguez said: "Yeah. Yes, I said that if I could see him again, that maybe and I think it is." Counsel then cross-examined Rodriguez vigorously on his prior truthfulness and on inconsistencies in his testimony.

Any harm resulting to Buchanan as a result of the identification was not the kind of prejudice that may be ascribed to a deficiency in counsel's performance. Counsel took a calculated risk based upon Rodriguez's prior testimony that he could not identify Buchanan. "Review of counsel's performance must be highly deferential; tactical decisions amount to ineffective assistance only if so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Benefield v. State*, 231 Ga. App. 80 (497 SE2d 650) (1998). Given Rodriguez's testimony on direct, the trial court was authorized to conclude that counsel's strategic decision fell within the wide range of reasonable, professional conduct. Consequently, Buchanan has failed to carry his burden of showing that counsel's performance was deficient. *Brewer v. State*, 224 Ga. App. at 657-658 (2).

3. Buchanan argues that his attorney should have moved for a directed verdict on Counts 7 through 9, 11, 12, 20, and 21 of the indictment because the evidence adduced was insufficient to support the charges averred in those counts. With respect to Counts 7 through 9, 12, 20, and 21, the State recognized that it had failed to carry its burden of proving those counts and moved the court to strike them from the verdict form. Consequently, as Buchanan admits, "the harm was averted."

Buchanan contends that his attorney should have moved for a directed verdict on Count 11 of the indictment because there was a fatal variance between the count as indicted and the evidence adduced at trial. Count 11 of the indictment avers that Buchanan robbed "Joventino Dominguez" of his money on February 2, 2001 by the use of a handgun. Escobar testified that on February 2, Buchanan took cash from "Joventino" by use of a handgun. Escobar testified he could not remember Joventino's last name. A police officer who responded to the February 2 robbery interviewed a victim named Joventino at Escobar's apartment; however, he recorded the victim's last name as "Tomes." The fact that there was inconsistent testimony about this victim's last name, however, is not a fatal variance where, as in this case, the allegations definitely informed Buchanan of the charges against him so as to enable him to present his defense and not

to be taken by surprise, the allegations adequately protected him against another prosecution for the same offense, and the evidence was sufficient to establish that the two last names in fact referred to the same individual. See *Cockrell v. State*, 248 Ga. App. 359, 362 (2) (545 SE2d 600) (2001) ("The determination of whether a variance in the indictment and the proof is fatal depends on whether the variance affects the substantial rights of the accused."). Further, Escobar's eyewitness testimony was sufficient to support Buchanan's conviction for armed robbery beyond a reasonable doubt. Id. at 360-361 (1) (a) (an alleged victim's testimony is not required to convict if there are other witnesses who can testify that a defendant committed acts which establish the elements of the offense).

The trial court properly found that Buchanan failed to carry his burden of establishing the second prong of the *Strickland v. Washington* test, the reasonable probability that but for his attorney's failure to move for a directed verdict on Counts 7 though 9, 11, 12, 20, and 21, the outcome of his trial would have been different. See *Glass v. State*, 255 Ga. App. at 401 (10).

4. Buchanan contends his attorney was deficient because he alerted the State to damaging evidence from Buchanan's co-defendant, Jones, when he belatedly notified[2] the State of his intent to impeach Jones with a letter that Jones had written. In the letter Jones took full responsibility for two of the robberies and purportedly exonerated Buchanan of those crimes. Although the introduction of the letter cost Buchanan the right to open and close final arguments, OCGA § 17-8-71, the prior inconsistent statements in the letter served to impeach Jones' testimony and were used for that purpose by trial counsel after he discussed the matter with Buchanan. We cannot say the trial court erred in concluding this was a reasonable strategy under the circumstances. See *Esquivel v. State*, 236 Ga. App. 325, 326 (512 SE2d 61) (1999).

5. Buchanan contends his trial counsel was ineffective for failing to adequately impeach co-defendant Jones. Buchanan contends trial counsel should have introduced Jones' prior criminal convictions and should have explored in greater detail whether Jones testified in exchange for a lighter sentence. Although trial counsel may have further impeached Jones with certified copies of his felony convictions, any such deficiency in counsel's performance could not have prejudiced Buchanan because the jury had already heard evidence of Jones' disreputable character. See *Ross v. State*, 231 Ga. App. 793, 798

---

[2] Pretermitting whether Buchanan's attorney violated the reciprocal discovery rules, OCGA § 17-16-1 et seq., Buchanan has shown no prejudice as a result of any violation. In fact, although the prosecutor was surprised by the letter, he elected to proceed with the trial.

(6) (499 SE2d 642) (1998) ("Although we agree that trial counsel could have further impeached these witnesses with certified copies of their felony convictions, any such deficiency in counsel's performance could not have prejudiced Ross because the jury was already fully aware of the disreputable character of these witnesses by virtue of their own testimony on the stand."). Jones testified that he was involved in the purchase of marijuana, participated in two of the indicted armed robberies, and initially lied about Buchanan's involvement in the crimes. "Accordingly, no reasonable probability exists that, but for this error on trial counsel's part, the result of the proceeding would have been any different." Id. See *Glass v. State*, 255 Ga. App. at 401 (10).

Further, contrary to Buchanan's claims, trial counsel questioned Jones about the fact that he had entered a guilty plea but, at the time of his testimony, had not been sentenced, raising the possibility that his testimony was motivated by the hope of a lighter sentence. Although counsel many not have pursued this line of inquiry as vigorously as Buchanan argues he should have, the trial court did not err in concluding that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy. See *Esquivel v. State*, 236 Ga. App. at 326.

6. Buchanan argues that his trial counsel was ineffective because he failed to ask the court to merge his convictions for aggravated assault into the armed robbery convictions at sentencing. At the motion for new trial hearing, the State conceded this issue and the trial court merged the convictions. As Buchanan concedes in his brief, he cannot show any prejudice as a result of his attorney's failure to raise this issue. Consequently, the trial court did not err in concluding that Buchanan failed to carry his burden of proving ineffective assistance of trial counsel. See *Glass v. State*, 255 Ga. App. at 401 (10).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 30, 2005 —
RECONSIDERATION DISMISSED MAY 6, 2005.

*Blend & Michael, James D. Michael*, for appellant.
*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.