## A05A1742. MOYE v. THE STATE.
### (626 SE2d 234)

RUFFIN, Chief Judge.

A jury found Matthew Moye guilty of armed robbery. Moye appeals, asserting that the trial court erred in overruling his objection to the State's closing argument. He also argues that he received ineffective assistance of counsel. For reasons that follow, we affirm.

Viewed favorably to the verdict, the evidence shows that, on August 15, 2001, the Center Pharmacy in Columbus was robbed. A man entered the pharmacy, threatened several employees with a gun, walked to a particular shelf, took the medication from that shelf, and fled. The pharmacist testified that OxyContin, a prescription medication, had been stored on that shelf until a few days before the robbery, when MS Contin, also a prescription medication, was placed there.

Detective Robert Webster investigated the robbery. When Webster asked the pharmacy employees who they thought might have been involved in the theft, the employees provided him with information on Moye. Several employees testified that Moye, a regular pharmacy customer who often purchased prescription OxyContin, always appeared unusually interested in how the pharmacy operated and where the pharmacist stored OxyContin. Webster also interviewed Barbara Bloom, who worked next to the pharmacy and reported seeing two men sitting in a blue van parked near the pharmacy on the morning of the robbery.

Webster went to Moye's home and observed a blue van parked outside, which Bloom later identified as the van she saw at the pharmacy on the day of the robbery. Webster then interviewed Moye, asking whether he knew anyone who might fit the description of the gunman. Moye denied any knowledge of the robbery, but mentioned

Randy Roach to Webster. Roach, who had been living with Moye, became a suspect, and one of the pharmacy employees identified him as the gunman. The police subsequently executed a search warrant at Moye's house and discovered two OxyContin prescription pill bottles from Center Pharmacy, one of which actually contained MS Contin. According to the Center Pharmacy pharmacist, although Moye obtained a prescription for MS Contin in July 2001, the pharmacy never filled it.

The police arrested both Moye and Roach. Moye admitted to police that, at Roach's request, he drove Roach to the pharmacy, but asserted that he did not know Roach was going to rob the store and took no part in the plan. Roach's girlfriend, however, testified that she saw Moye and Roach plan the robbery together. And Roach testified at trial extensively about Moye's participation.

According to Roach, he and Moye often crushed OxyContin, mixed it with warm water, and injected it intravenously. The day before the robbery, Moye suggested to Roach that they steal a quantity of OxyContin from the local pharmacy. Since Moye patronized the pharmacy, they agreed that Roach would enter the store, while Moye waited in the getaway car. Moye gave Roach a gun and a nylon stocking to use in the robbery, as well as a map of the pharmacy's interior specifying the location of the OxyContin.

The following morning, the two went to the pharmacy in a van and watched the store, waiting for a time when no customers were present. Over one hour later, Roach entered the pharmacy, threatened the employees with a gun, took a "whole shelf full of pills" from the area Moye had described, and fled. Although Roach believed he had taken OxyContin, he actually stole MS Contin. Moye and Roach then went to the house of another individual, who agreed to sell the pills. According to Roach, they left all of the drugs except one or two bottles, which Moye took.

1. Moye first argues that the trial court erred in overruling his objection to an allegedly improper remark by the prosecutor during closing argument. The prosecutor stated as follows: "[Defense counsel] got up here and said, oh, you're going to hear the evidence in this case, this poor boy has been prosecuted. He never has done anything wrong. Marijuana, carrying a concealed weapon." Moye objected, asserting that the State had not presented evidence of any prior convictions. The trial court did not specifically rule on the objection, stating instead that "[t]he jury can remember the evidence." The prosecutor then clarified that he was talking about prior arrests, rather than convictions.

According to Moye, evidence of these prior charges was not properly before the jury and should not have been referred to by the State. The record shows, however, that the State had previously

mentioned the arrests in closing argument without objection from the defense. Moye thus failed to preserve his objection for appeal.[1]

Moreover, the prosecutor's remarks about Moye's prior arrests stemmed from the State's cross-examination of Moye's character witness, who testified about Moye's good reputation in the community and believability under oath. On cross-examination, the State asked the witness whether she had heard that Moye had been arrested for felony theft, misdemeanor possession of marijuana, and carrying a concealed weapon. The witness responded that she had not heard about these arrests, but that such information would not change her opinion of Moye.

As noted by our Supreme Court, "the [S]tate may explore specific acts of bad conduct on cross-examination of the defendant's character witnesses for the purpose of testing the witnesses' knowledge of the defendant's reputation."[2] In conducting this cross-examination, the State may ask about arrests, convictions, and uncharged bad acts that it could prove.[3] Regardless of whether the witness denies knowledge of the conduct, the testimony is evidence that the jury may consider for impeachment purposes.[4]

The jury, therefore, had already heard proper impeachment evidence relating to Moye's previous arrests. Furthermore, the State presented significant evidence implicating Moye in the robbery, including incriminating testimony from Roach and his girlfriend, evidence of Moye's suspicious behavior in the pharmacy before the robbery, and Roach's detailed knowledge about the location of Oxy-Contin in the pharmacy. Accordingly, even if the prosecutor's closing remarks were improper, we cannot find that they harmed Moye or contributed to the verdict, and they thus present no basis for reversal.[5]

2. Moye also argues that trial counsel was ineffective in failing to object to the prosecutor's initial remark in closing argument regarding his previous arrests. To prevail on this claim, Moye must show that counsel's performance was deficient *and* that the deficiency

---

[1] See *Butler v. State*, 273 Ga. 380, 384 (8) (541 SE2d 653) (2001) ("[A] defendant must timely object to the alleged impropriety in closing argument so that the trial court can take remedial action, if any is warranted.").

[2] *Jones v. State*, 257 Ga. 753, 758, n. 8 (363 SE2d 529) (1988).

[3] See *Glass v. State*, 255 Ga. App. 390, 399 (9) (d) (565 SE2d 500) (2002).

[4] See id.; *Strickland v. State*, 223 Ga. App. 772, 778 (2) (479 SE2d 125) (1996).

[5] See *Sterling v. State*, 267 Ga. 209, 213 (8) (477 SE2d 807) (1996) (improper closing argument harmless given overwhelming evidence of guilt and high probability that argument did not contribute to jury's verdict).

prejudiced him.[6] Prejudice occurs when "there is a reasonable probability that but for counsel's error the jury would have had a reasonable doubt regarding [Moye's] guilt."[7]

As discussed in Division 1, significant evidence linked Moye to the robbery. Given this evidence, Moye cannot establish a reasonable probability that the alleged deficiency prejudiced him. Pretermitting whether a deficiency occurred, therefore, Moye's claim fails.[8]

3. Finally, Moye asserts that trial counsel should have moved to suppress the evidence seized during the search of his home. He claims that the affidavit supporting the search warrant did not provide sufficient probable cause to believe that evidence could be found at the house. He further argues that if counsel had filed a motion to suppress, the trial court would have suppressed the OxyContin pill bottles and MS Contin discovered in the search.

Again, however, Moye cannot demonstrate the prejudice necessary to establish ineffective assistance of counsel. In light of the other evidence tying Moye to the robbery, we find no reasonable likelihood that suppression of the two pill bottles and the MS Contin would have altered the outcome of the trial.[9] It follows that the trial court properly denied the ineffective assistance claim.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JANUARY 19, 2006.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Stacey S. Jackson, Assistant District Attorney*, for appellee.

---

[6] See *Moore v. State*, 242 Ga. App. 249, 250 (1) (529 SE2d 381) (2000).

[7] Id.

[8] See id. at 251-252 (1) (b).

[9] See *Avans v. State*, 207 Ga. App. 329, 330-331 (3) (427 SE2d 826) (1993).